AMANDA L. MORTON, Appellant, v. SOUTHWEST-ERN TELEGRAPH & TELEPHONE COMPANY et al.—No. 20143.

AMANDA L. MORTON, Appellant, v. SOUTHWEST-ERN TELEGRAPH & TELEPHONE COMPANY and UNION ELECTRIC LIGHT & POWER COMPANY.—No. 21431.

AMANDA L. MORTON v. HIRAM LLOYD BUILD-ING & CONSTRUCTION COMPANY, Appellant. —No. 21432.

Division Two, January 6, 1920.

1. **APPELLATE JURISDICTION:** Appeals to Different Appellate Courts. The same case cannot be pending on appeal from the same final judgment in two appellate courts through separate appeals by different parties to the action. So where more than one party appeals and the amount in dispute in either appeal gives the Supreme Court jurisdiction, all the appeals should be sent to said court for final adjudication.

2. ———: ———: This Case. Plaintiff brought suit for $10,000 against a telephone company, an electric power company and a construction company, for the negligent killing of her husband, and recovered judgment for $7500 against the construction company alone. At the same term and on June 26th, the construction company appealed to the Court of Appeals, and a short transcript was duly

filed in that court. At the same term but on September 29th, plaintiff applied for an appeal from the judgment, and her appeal was allowed to the Court of Appeals, and a transcript ordered sent to that court, but it was sent to the Supreme Court. Two years later, the telephone company and the power company filed in the Court of Appeals a certified transcript, showing that the judgment had been rendered, and the appeal taken, and moved that the judgment be affirmed, and that motion was sustained; but three days later the construction company moved that the order of affirmance be set aside, and the motion was sustained, and thereupon plaintiff filed her motion to transfer the cause involving both appeals to the Supreme Court, and that motion was sustained and the cause transferred. *Held*, that the Court of Appeals had no jurisdiction to render the judgment of affirmance, but only jurisdiction to determine whether it in fact had jurisdiction, and having ascertained that it did not, it could only perform the mere ministerial act of transferring the case to the Supreme Court, whether or not plaintiff had perfected her appeal.

3. ————: Appeal to Wrong Court. Where plaintiff sues three corporations for $10,000, and recovers a verdict of $7500 against one of them, and the verdict is in favor of the other two, and she files a motion for a new trial against them, which is denied, her appeal is properly allowable to the Supreme Court, for the amount in dispute, as between her and those two, is $10,000; and if the trial court grants her appeal, but erroneously orders that the transcript be sent to the Court of Appeals, the order, upon notice, can be corrected in the trial court, and if correction is refused she can, by mandamus, compel the trial court to correct its record to conform to the law. But if, in spite of the erroneous order granting her an appeal to the Court of Appeals, the transcript is sent to the Supreme Court, the record will be treated as having been properly corrected so as to show her appeal was granted to the Supreme Court.

4. APPELLATE PRACTICE: Knowledge of Defective Appliance: No Facts in Evidence. Where a telephone company and a power company each properly constructed an electric wire on a line of poles for the accommodation of a construction company engaged in constructing a reservoir, and the employees of the construction company, in the progress of their work, fourteen days before the accident, broke one of the poles, and six days later broke the telephone wire, which later sagged down within four or five feet of the ground and as it sagged came in contact with the power wire, and no facts are presented in evidence that either company knew that the wire was broken or that it had sagged, and no conclusive evidence that either of them had any reason to know such facts, a verdict for them, in an action by the wife of an employee of the construction company who came in contact with the wire and was

killed, rendered in pursuance to correct instructions, cannot be disturbed on appeal, as being against conclusive evidence of their actionable negligence.

5. **NEGLIGENCE: Electric Wire: Demurrer to Evidence.** Where a telephone wire and a highly-volted power wire had been placed upon cross-arms of poles for the accommodation of a construction company engaged in building a reservoir, and its employees in the progress of the work broke one pole fourteen days before the accident and six days later the telephone wire broke and one end was wrapped about the next pole, where it gradually worked loose and fell down over the power wire, and continued to sag lower and lower day by day, the facts and dangerous situation being known to the superintendent and foremen of the construction company, no demurrer to the evidence should be sustained in a suit by the husband of an employee who, in the discharge of his duties in the night time, came in contact with the wire and was killed.

6. ———: **Compensatory Damages: Life Expectancy.** In a suit by a widow for the negligent killing of her husband, the amount she is entitled to recover is the pecuniary loss she has suffered and will suffer by being deprived of his support during their probable joint lives, and therefore mortuary tables showing the life expectancy of each may be introduced in evidence, in order that the number of years of the one whose life expectancy is the least may be used as a basis for calculating her loss.

7. ———: ———: **Pleading: Age of Plaintiff: Evidence.** In case of a death claim it is proper to permit plaintiff to prove her age and state of health, as well as the age, condition of health, earning capacity and personal expense of deceased, without specifically pleading those facts.

8. ———: ———: **Use of Wages: General Objection.** A general objection to plaintiff's testimony that deceased gave her a certain portion of his wage for her support, that he spent his evenings at home and that she paid his burial expenses, that "it is irrelevant and immaterial," is not sufficient to invite a ruling by either the trial or appellate court.

9. ———: **Instruction: Electric Wire: Knowledge of Danger.** An instruction which required the jury to find that defendant caused and permitted a telephone wire to become loose, sag and come in contact with a power wire and to fall to the ground where deceased was expected to be, necessarily required them to find that defendant knew that the coming of the telephone wire in contact with the power wire and with deceased was dangerous. A company whose business requires a constant use of electric current is chargeable with knowledge of its dangerous character.

10. ———: ———: **Measure of Damages: Non-Direction.** An instruction telling the jury that, in assessing plaintiff's damages, they will award her such sum, not exceeding $10,000, as they find from the evidence will fairly and justly compensate her for all pecuniary loss she has sustained or will sustain as a necessary result of the death of her husband, is correct as far as it goes; and if defendant wishes a more specific direction as to how to estimate the damages, it is its duty to ask it; otherwise, the defect, if any, is merely non-direction, which is not reversible error.

Appeal from St. Louis City Circuit Court.— *Hon. Kent K. Koerner,* Judge.

AFFIRMED.

*Safford & Marsalek* for Amanda L. Morton.

(1)  The undisputed evidence in this case showed that defendant Telephone Company. permitted its wires to remain, unused, on the poles mentioned in evidence for a long time, at least two months; that one of the wires was broken eight days before the accident to plaintiff's husband, and the end coiled around one of the poles;  the next day the broken end was seen, gathered in a bundle on the ground at the foot of the pole.  A week before the accident this wire had sagged down past the power wires, between said pole and the next pole south so that its lowest point was about a foot above the reach of an ordinary man.  The day before the accident it had sagged to within four feet of the ground. This wire was in close proximity to a road, much used by the employees of defendant Construction Company. At all times after it commenced to sag it was likely to touch the power wires on the same poles, and if a person came in contact with it, to convey the dangerous current from the power wires to him, whether the power wires were properly insulated or not.  Under these circumstances defendant Telephone Company was, as a matter of law, guilty of negligence in failing to remove its dangerous wire.  Geisemann v. Elec. Co., 173 Mo. 678;  Goodwin v. Telephone Co., 157 Mo. App. 607; Kribs v. L. & P. Co., 199 S. W. 261;  Brubacker v. Elec,

Co., 130 Mo. App 439; Wilhite v. City, 167 Mo. App. 155; Mellican v. Elec. Co., 90 Mo. App. 595. (2) The undisputed evidence showed that when the power wires of defendant Power Company were moved from the broken pole mentioned in evidence to the new pole, about two weeks before the accident, the insulation on the power wires was left in an impaired condition where the wires had been fastened to the old pole; that eight days before the accident one of the telephone wires on the same line of poles was broken, and said uninsulated wire ran from the top of the new pole down to a point at or near the bottom, where it was coiled, or left in a bundle, so that it passed, in its course, within a short distance of the defective insulation on the power wires; that the telephone wire sagged between said pole and the next pole south, so that a week before the accident it was just out of the reach of an ordinary man, and the day before had come within four feet of the ground; that the telephone wire was likely to convey the dangerous current from the power wire to a person who came in contact with it, whether the power wire was properly insulated or not. Under these circumstances defendant Power Company was guilty of negligence, as a matter of law, in failing to remove the telephone wire, in permitting its power wire to be without proper insulation, and in permitting its power wire to be and remain charged with a dangerous current of electricity. Kribs v. L. & P. Co., 199 S. W. 261; Brown v. Light Co., 137 Mo. App. 734; Brubacker v. Elec. Co., 130 Mo. App. 439; Harrison v. L. & P. Co., 195 Mo. 606. (3) The undisputed fact that plaintiff's husband came to his death by coming into contact with the electric current which escaped from defendant's wire is conclusive proof of the negligence of defendant Power Company. Geisemann v. Electric Co., 173 Mo. 678; Von Trebra v. Light Co., 209 Mo. 659; Clark v. R. Co., 234 Mo. 419. (4) Electricity is one of the most dangerous agencies ever discovered by human science, and the law requires that the highest degree of care be exercised in its use to pre-

vent injury to others. Clark v. Ry. Co., 234 Mo. 423; Hill v. Electric Co., 260 Mo. 77; Von Trebra v. Light Co., 209 Mo. 648; Geisemann v. Electric Co., 173 Mo. 674. (5) Where the evidence is conflicting the court, on appeal, will not weigh it to determine whether or not the verdict is supported by the weight of the evidence; but where a verdict is not supported by substantial evidence it is the duty of the trial court to set it aside on motion, and upon its failure to do so the court, on appeal, will reverse the judgment. Ettlinger v. Kahn, 134 Mo. 497; Harper v. Railroad, 186 Mo. App. 308; Tibbe v. Kamp, 154 Mo. 585; Turner v. Anderson, 236 Mo. 545. (6) Where the court, on appeal, is satisfied that the verdict was rendered in disregard of the evidence, and the trial court in refusing a new trial has wrought a manifest injustice, the court will set aside the judgment and order a new trial. Whitsett v. Ransom, 79 Mo. 258; Spohn v. Railway Co., 87 Mo. 74; Garrett v. Greenwell, 92 Mo. 125; State v. Patrick, 107 Mo. 179; Southern, etc., Co. v. Surety Co., 207 S. W. 510.

*Jeffries & Corum* for Southwestern Telephone & Telegraph Company, *D. A. Frank* of counsel.

(1) There was no evidence offered by the defendant, yet the plaintiff's evidence was of such character that the jury was warranted in the finding from the facts before it that the Telephone Company did not, at the time of the accident, and theretofore, maintain a telephone wire on the poles, or that at the time of the accident, and that, theretofore, it could have discovered the danger by the use of ordinary care. The jury is entitled to draw more than one inference or inferences from the evidence adduced. (a) The jury's finding in this respect is binding upon this court and cannot be disturbed. Kennett v. Constr. Co., 273 Mo. 299; Moore v. Railroad, 268 Mo. 34; In re Lankford Estate, 272 Mo. 1. (b) Whether or not the Telephone Company in this

particular case was guilty of negligence is a question for the jury. 15 Cyc. 480; Jones on Tel. & Tel. Companies, 662; Brubaker v. K. C. Elec. L. Co., 130 Mo. App. 439; Block v. Milwaukee Street Ry. Co., 89 Wis. 371, 27 L. R. A. 365; Goodwin v. Telephone Co., 157 Mo. App. 606. (2) The plaintiff cannot now charge that the Telephone Company was negligent in failing to use the highest degree of care when the case was submitted to the jury on the question of ordinary care. Plaintiff is bound before this court to rely upon the theory relied on at the trial. 3 Corpus Juris, 718; Glaser v. Rothschild, 106 Mo. App. 429; Taylor & Sons Brick Co. v. Railroad Co., 213 Mo. 728; Walker v. Railroad, 193 Mo. 483; Williams v. Santa Fe, 233 Mo. 666; Grimes v. Cole, 133 Mo. App. 526. (3) There is no evidence that the Telephone Company was negligent. Strack v. Telephone Company, 216 Mo. 601.

*Jourdan, Rassieur & Pierce* for Union Electric Light & Power Company.

(1) (a) The jury's finding in favor of the Power Company is binding on this court and should not be disturbed. (b) The mere presence of an uninsulated wire followed by death or injury caused by escaping current, does not give rise to indisputable proof of actionable negligence on the part of the owner of the wire as the cause of the death or injury. (c) In overruling the plaintiff's motion for a new trial in the cause at bar, the trial court did not abuse its discretion, for reasonable men could have drawn more than one inference from the testimony adduced. (d) The mere fact that this defendant's wire may have been uninsulated and plaintiff's husband met his death from the escaping current, does not make out a case of liability against this defendant, where an independent act or agency of some third party intervened and thereby caused the death. This independent act or agency intervening is in law regarded as the proximate cause.

This defendant could not be liable for such unless it could have been reasonably anticipated. Brubaker v. Electric Light Co., 130 Mo. App. 446; Luehrman v. Laclede Gas Light Co., 127 Mo. App. 213; McMullen v. Edison Electric, 34 N. Y. Supp. 248, 13 Misc. 392; Brush Electric Co. v. Lafevre, 93 Tex. 604; Blackburn v. Railroad Co., 180 Mo. App. 548; Freeman v. Brooklyn Heights Railroad, 66 N. Y. Supp. 1052; 9 Ruling Case Law, 1213, sec. 21. (e) The testimony in this case is overwhelming that Morton met his death as the result of an intervening act of the Construction Company in breaking down the telephone wire and allowing it to sag where it would likely come in contact with persons upon the ground, and that this defendant had no knowledge of this condition and that the condition had existed only a few hours before Morton's death.

*Jones, Hocker, Sullivan & Angert* for Hiram Lloyd Building and Construction Company.

(1) The demurrer to the evidence offered by the Construction Company should have been sustained. The petition charged joint acts of negligence on the part of all three defendants, and there was no evidence whatever of this defendant's participation in the proximate cause of the deceased's death. There was particularly no evidence whatever of negligence on the part of this appellant. It is not negligence not to take precautionary measures to prevent an injury, which, if taken, would have prevented it, when the injuries could not reasonably have been anticipated and would not, unless under exceptional circumstances, have happened. American Brewing Assn. v. Talbot, 141 Mo. 683; Stanley v. Union Depot Ry. Co., 114 Mo. 623; Brubaker v. Electric Light Co., 130 Mo. App. 449. (2) The court erred in admitting in evidence the evidence of the actuary, George Graham, since the tables from which he testified were based upon conditions different from those which the plaintiff and deceased had. This testimony further-

more was particularly incompetent with respect to the expectancy of the plaintiff. 17 Corpus Juris, p. 1356; Morse v. Detroit Railroad Co., 168 Mich 99; Rajnow ski v. Detroit Railroad Co., 74 Mich. 20; Mississippi Oil Co. v. Smith, 95 Miss. 528, 735; Cumberland Tel. Co. v. Anderson, 89 Miss. 722; Vicksburg Railroad Co. v. White, 82 Miss. 468. (3) The trial court erred in permitting the plaintiff to testify as to her age, when there was no allegation in the petition with reference to the same; it was also error to permit her to state that her health was poor. Smelser v. Railroad, 262 Mo. 41; Johnson v. Mining Co., 171 Mo. App. 143; Benton v. Chicago Railroad Co., 55 Iowa, 497; Seattle Electric Co. v. Harkless, 144 Fed. 381, 75 C. C. A. 317; Chicago Railroad Co. v. Woolridge, 174 Ill. 336; Troll v. Gas Light Co., 182 Mo. App. 600. For the same reason, the trial court erred in permitting her to testify as to the age of the deceased. Smelser v. Railroad, 262 Mo. 41; Johnson v. Mining Co., 171 Mo. App. 143. For the same reason, the testimony was inadmissible as to how much the deceased was earning, and how much he gave the plaintiff out of his wages for her support. Smelser v. Railroad, 262 Mo. 41; Johnson v. Mining Co., 171 Mo. App. 143. The testimony that the deceased spent his evenings at home with the plaintiff was grossly incompetent, as not a proper element of damages. Boyd v. Railroad, 236 Mo. 90; Howard v. Scarritt Estate, 161 Mo. App. 562; Schaub v. Railway Co., 106 Mo. 93. The testimony as to the payment of burial expenses by the plaintiff was improperly admitted, as it was not a proper element of damages. Hayden v. Maher, 67 Mo. App. 436; Holland v. Brown, 35 Fed. 43; Wilcox v. Railroad Co., 18 Del. 157; St. Louis Railroad Co. v. Sweet, 57 Ark. 287; Traction Co. v. Howe, 60 N. J. L. 444. The testimony as to the deceased protecting the plaintiff was also incompetent as not a proper element of damages. Boyd v. Railroad, 236 Mo. 90; Howard v. Scarritt Estate, 161 Mo. App. 562; Schaub v. Hannibal & St. J. Ry. Co., 106 Mo.

93. (4) Plaintiff's instructions numbers 1 and 2 are erroneous in that they attempt to cover the whole case and authorize a verdict for the plaintiff without requiring the jury to find that the Construction Company knew, or by the exercise of ordinary care could have known, that said telephone wire was liable to come in contact with the power wire of the Power Company, and that it knew such a contract would be dangerous. Nephler v. Woodward, 200 Mo. 189; American Brewing Assn. v. Talbot, 141 Mo. 683. (5) Plaintiff's instruction does not correctly declare the measure of damages in this case. McGowan v. St. Louis Ore & Steel Co., 109 Mo. 518; Calcaterra v. Iovaldi, 123 Mo. App. 354. (6) The verdict in this case in favor of the Telephone Company and the Power Company, is either against the weight of the evidence, or the verdict against this appellant is wholly unsupported by the testimony. Von Trebra v. Gas Light Co., 209 Mo. 659; Geisemann v. Electric Co., 173 Mo. 678; Clark v. Railway Co., 234 Mo. 423; Hill v. Union Electric L. & P. Co., 260 Mo. 77; Brown v. Light, Power & Ice Co., 137 Mo. App. 754; Goodwin v. Telephone Co., 157 Mo. App. 607; Aheard v. Oregon Teleg. & Tel. Co., 24 Ore. 276, 22 L. R. A. 635.

WHITE, C.—Two separate appeals from one judgment and one motion to affirm have been docketed as three cases by the above numbers, but by stipulation they are consolidated and considered together.

The plaintiff, Amanda L. Morton, brought suit in the Circuit Court of St. Louis against the Hiram Lloyd Building & Construction Company, the Southwestern Telegraph & Telephone Company, and the Union Electric Light & Power Company, seeking to recover damages on account of the death of her husband, caused, it is alleged, by the negligence of the three defendants. On trial to a jury in the Circuit Court of St. Louis, a verdict was rendered in her favor in the sum of sev-

·en thousand, five hundred dollars against the defendant Hiram Lloyd Building & Construction Company, and in favor of the other two defendants. A motion for new trial was filed by Amanda L. Morton as against the Southwestern Telegraph & Telephone Company, hereafter for convenience called "the Telephone Company," and the Union Electric Light & Power Company, hereafter called "the Power Company;" and a motion for new trial was filed by the Hiram Lloyd Building & Construction Company, hereafter called "the Construction Company." These motions were overruled at the June term, 1916. On June 26, 1916, the Construction Company appealed from the judgment against it to the St. Louis Court of Appeals, and a short transcript was duly sent to that court. At the same term, on September 29th, the plaintiff, Amanda L. Morton, appealed from said judgment to the St. Louis Court of Appeals and her appeal was duly allowed. A transcript of the judgment and order granting the appeal of the plaintiff, Amanda L. Morton, although ordered by the trial court sent to the St. Louis Court of Appeals, was sent to this court and appears here under the serial number 20143. Those transcripts thus rested in the two courts until July 24, 1918, when the respondents in the plaintiff's appeal, the Telephone Company and the Power Company, filed a joint motion to affirm in the St. Louis Court of Appeals, accompanied by the certificate of the Clerk of the Circuit Court of the City of St. Louis, as provided by Section 2047, Revised Statutes 1909, showing that the judgment had been rendered, as stated above, and the appeal taken. This motion was by the St. Louis Court of Appeals on the same day sustained and the judgment affirmed. Three days later, July 27, 1918, the Construction Company, appealing defendant, filed a motion in said court to set aside the order of affirmance, with suggestions in support of same. To this the other defendants, Telephone Company and Power Company, filed suggestions in opposition. This mo-

tion, October 5, 1918, was sustained and the order of affirmance set aside.

On the twenty-eighth day of October, 1918, Amanda L. Morton filed her motion in the St. Louis Court of Appeals to transfer the cause involving both appeals to this court and that motion was on November 19, 1918, sustained and the appeals transferred here where they appear under numbers 21431 and 21432.

The death of Ernest L. Morton, husband of plaintiff, from which arose her claim for damages, occurred on the twenty-sixth day of November, 1915, while he was employed by the appellant Construction Company. The Construction Company, under contract with the city, was at the time engaged in the reconstruction and repairing of a reservoir owned by the city. The reservoir was located in what is known as Reservoir Park; a strip of park surrounded the two basins which constituted the reservoir. The Construction Company had built a fence around the reservoir, dividing the strip of park which surrounded it, and the work was being done inside this inclosure. A line of poles ran from the northwest corner of the property southwardly across the fence to a point inside the park, there being at least two of such poles inside the inclosure. These poles were from twenty-five to thirty feet in height, and each one supported two cross-arms about eighteen inches apart. The upper cross-arms carried a telephone wire; the lower cross-arms carried three or four power wires which were charged with very high voltage of electricity. There was evidence tending to show that the telephone wire and upper cross-arms were owned by the Telephone Company. The defendant Power Company owned the power wires on the lower cross-arms, and through them conveyed current to a transformer and a meter where the current and power were delivered to the defendant Construction Company inside the inclosure. The Power Company had a contract with the Construction Company to furnish power for

use in the work which the Construction Company was doing.

On the 12th day of November, fourteen days preceding the death of Morton, the employees of the Construction Company, in the progress of their work, caused the first pole inside the inclosure to be broken off. A few days later this pole was replaced. On the eighteenth day of November, and eight days before the death of Morton, the employees of the defendant Construction Company, while engaged in "fleeting a guy," that is, moving a guy line forward with a pile driver, broke the telephone wire inside the inclosure, between the first pole inside and the first pole outside. The broken wire dropped down beside the first pole inside the inclosure, was gathered up by one of the Construction Company's employees, coiled up and hung on the pole. It remained intact between the first and the second poles inside the inclosure. There is some evidence indicating manipulation of the broken end in wrapping it around the pole. Soon after this wire was broken it began to sag between the first and second poles inside the inclosure. A day or two, or possibly longer, before the death was inflicted, it had sagged to within ten or twelve feet of the ground. In sagging down it came in contact with the power wires. On the twenty-sixth of November, in the afternoon, it was seen to sag to within four or five feet of the ground.

Morton's work required him to be on the ground during the night. He was not a watchman, but what is termed, "the handy man"—the general utility man. It was his duty to see that the machinery was kept in operation and that everything was in proper shape during the night. Among other things, it was his duty to fill the boilers with water. Eight or ten feet from where the telephone wire sagged was a water pipe which came from the reservoir, at which pipe he could get water for the boilers. He went to work as usual on the twenty-sixth of November, at night. About eleven o'clock that night the Construction Company foreman

discovered his body lying across the telephone wire with his feet on the ground. Sparks were coming from his leg and body and his clothing was on fire. He was burned in such a way as to indicate that he met instantaneous death by electrocution. Other details in connection with the incident are furnished by the evidence as throwing light upon the issue as to whether the defendants, or any of them, were guilty of such negligence as to authorize a recovery. Such of these as are pertinent will be noticed in considering the proposition urged for a reversal.

The petition alleges a cause of action against each of the defendants in that they were each and all negligent in permitting the wire mentioned to sag and become charged with electricity in such manner as to become dangerous and cause death. There was no claim of contributory negligence on the part of either of the defendants, each of whom answered by a general denial.

I. The jurisdiction of this court is challenged by the respondent-defendants. They move to have case

**Appellate Jurisdiction.** No. 21431 ordered back to the St. Louis Court of Appeals, or the appeal dismissed here, and case No. 20143 stricken from the docket.

Whatever be the modifications by recent adjudications of the ancient doctrine regarding the entirety of a judgment, the rule still obtains that there can be rendered in an action only one final judgment which must finally dispose of the case as to all parties. This is statutory. [R. S. 1909, sec. 2097; Wollman v. Loewen, 108 Mo. App. 581; Clark v. Railroad, 234 Mo. l. c. 435; McQuitty v. Steckdaub, 190 S. W. 590; Dixon v. Transit Co., 197 Mo. App. 646.] Therefore the same case cannot be pending on appeal in two appellate courts through the appeals of different parties to the action. [Sandusky, Exr. v. Sandusky, 265 Mo. l. c. 232; Connelly v. Railroad, 169 Mo. App. 272, l. c. 281.]

Otherwise, in the case of cross-appeals there might ensue inconsistent judgments in the same case. So where more than one party appeals and the amount in dispute in either appeal gives this court jurisdiction, both appeals should be sent to this court for final determination. [Sandusky, Exr. v. Sandusky, 265 Mo. l. c. 232.]

In case No. 21431, involving the same appeal as No. 20143, the respondents, the Telephone Company and the Power Company, filed in the St. Louis Court of Appeals the certificate of the Clerk of the Circuit Court provided for in Section 2047, Revised Statutes 1909, as a basis for a motion to affirm the judgment. This certificate did not show on its face a want of jurisdiction in the Court of Appeals; the judgment was affirmed and the order afterwards set aside on it being brought to the attention of the court that it was without jurisdiction. The matter then stood in the St. Louis Court of Appeals on the appeal of the Construction Company, and the appeal of the plaintiff as to the other two defendants. The plaintiff had not perfected her appeal, nevertheless the case was lodged in the St. Louis Court of Appeals by the action of the defendant-respondents. It is claimed by the Telephone Company and the Power Company here that inasmuch as the appeal was not perfected in accordance with the requirements of Sections 2047 and 2048, the Court of Appeals rightly affirmed the judgment. That court had no jurisdiction to make a final determination of the case, and an affirmance would be a final determination. It had authority only to determine whether in fact jurisdiction existed in that court and, having ascertained that it did not, it could only perform the mere formal act authorized by the statute of transferring the case to this court. [Sec. 3938, R. S. 1909; Moberly v. Lotter, 266 Mo. l. c. 464-6; Forsee v. Gates, 89 Mo. App. l. c. 581.] Therefore, on the transfer of the case here, with proper authority to make such transfer, this court acquired and has jurisdiction finally to determine the case represented by the two appeals.

II.   Even if this court had not acquired jurisdiction by transfer of Case No. 21431 from the Court of Appeals, jurisdiction was lodged here by **Appeal to Wrong Court.** virtue of plaintiff's appeal as shown by her transcript in Case No. 20143.

Plaintiff filed a proper affidavit for appeal during the June term, 1916, when the judgment was rendered against her in favor of the two non-appealing defendants. Her *petition* disclosed on its face she was suing for ten thousand dollars. The Constitution and the statute contemplated that her appeal should be granted to this court. She deposited with her application for appeal the ten dollars fee required to be paid by the appellant. The court, by an entry of record, *sustained her application for an appeal,* but in the face of the statute and Constitution made the record recite that her appeal was allowed to the St. Louis Court of Appeals, which had no jurisdiction over her case, instead of allowing the appeal to this court as the Constitution and statute required. We will not presume that the trial court intentionally violated the law in granting plaintiff an appeal to a court having no jurisdiction of her cause, but on the contrary must presume that that portion of the order granting the appeal to the St. Louis Court of Appeals was the result of *oversight or mistake.* In any event, if the attention of the trial court had been called to the error it could, undoubtedly, upon proper notice have amended its record to comply with the requirements of the law, even after the case had been appealed to the appellate court. [State ex rel. v. Ellison, 210 S. W. 401, l. c. 403; Johnston v. Ragan, 265 Mo. 420, l. c. 441, 178 S. W. 159; Exchange National Bank v. Allen, 68 Mo. 474, l. c. 486; DeKalb County v. Hixon, et al., 44 Mo. 341.] It is clear that if plaintiff, on discovering the mistake, had applied to the court below to *correct its entry* and grant the appeal to this court, it would have corrected the same because the amount involved was ten thousand dollars, and this court alone had jurisdiction over the cause

on appeal. If the trial court had refused to correct the error under such circumstances this court, upon a proper application by plaintiff, would, by writ of mandamus, have compelled the trial court to correct its record in conformity to the law. [State ex rel. v. Homer, 249 Mo. 58, l. c. 65, 66, 67 and 68; State ex rel. v. Shackelford, 263 Mo. 52, l. c. 60 and fol.] Under the circumstances aforesaid the trial court would have had no discretion in regard to the matter, as the record proper disclosed the plaintiff was suing for ten thousand dollars, and the law designated this court as the tribunal to try her case upon appeal.

We now have before us all the records and proceedings of the trial court in respect to this cause. All the parties are now before the court on a consolidated case. The record shows on its face that plaintiff filed a timely and proper affidavit for appeal, and did not ask that her appeal be allowed to the Court of Appeals which had no jurisdiction over her case. Plaintiff has taken all the steps which would have been necessary to present her case to this court had the trial court complied with the law in granting her appeal.

Upon the record thus presented disclosing a palpable *mistake* upon the part of the trial court, we will treat its record as having been properly corrected so as to show that plaintiff's appeal was granted to *this* court instead of to the St. Louis Court of Appeals. [State ex inf. v. Clardy, 267 Mo. l. c. 380-381; Tebeau v. Ridge, 261 Mo. l. c. 559; Davidson v. Land & Imp. Co., 253 Mo. l. c. 229; State ex rel v. McQuillin, 246 Mo. l. c. 594; Darrier v. Darrier, 58 Mo. l. c. 233.]

III. Both appellants assign the same, and only one, error, which they claim was committed by the trial court in favor of the non-appealing defendants, viz.: that the verdict in their favor was against conclusive evidence of their actionable negligence, on account of which the motion for new trial should have been sustained.

**Knowledge of Defective Wire.**

There was no evidence that either of said defendants knew the telephone wire was broken or that it sagged, and no conclusive evidence that either of them had any reason to know such facts. It was for the jury to say, under proper instructions, whether those companies were negligent in failing to learn and guard against a condition which rendered the electric current dangerous. There were sufficient facts from which the jury might well find, as it did, that the .Power Company did not fail to exercise the highest degree of care to prevent injury by its appliances, and that the Telephone Company did not fail to exercise ordinary care in that respect. The verdict is conclusive upon this court.

IV. The appellant-defendant assigns error to the failure of the trial court to sustain its demurrer to the evidence, claiming there was no evidence
Sufficient
Evidence. of any negligence on the part of the said appellant.

The evidence shows that the appellant's employees broke the wire, which subsequently sagged, wound up the end of it in a careless manner which did not prevent its sagging, knew that it did sag and continued to sag more and more, a fact observable to anybody who passed that way. The Construction Company knew that it was receiving a very high power from the electric wires; it knew from the position of the wires in the park that the sagging telephone wire was likely to come in contact with the highly charged wires and become dangerous to anyone within whose reach it should come while on the ground. It was a condition from which a man of reasonable prudence should have foreseen that injury was likely to ensue.

The telephone wire on the upper cross-arms of the pole was broken on the eighteenth day of November by William E. Ahrens, appellant's pile-driver foreman. He ordered the broken end coiled up and hung on the pole by an employee. A few days afterwards, about four or five days before the death of Morton, he no-

ticed that the coil of wire which was hung up on the pole was working loose and he took a piece of marline and supposed he made it fast. On the day he broke 'the wire he reported the fact to Mr. Gove, superintendent of the Construction Company.

Mattox, another pile-driver foreman, was hauling concrete piles and placing them along the reservoir on Friday, the day preceding the night on which Morton was killed, and saw the coil of wire lying loose at the foot of one of the poles and warned his men to keep away from it. About three o'clock on that day Harry Clark, pile-driver, saw the wire between the poles sagging down from ten to thirteen feet from the ground.

H. Middleberg, construction foreman of the Construction Company, about four or five o'clock on the day Morton was killed, saw the wire sagging down between the poles to about four or five feet above ground. He had been requested by Mr. Ahrens, pile-driver foreman, on the day the wire was broken to take hold of it and throw it aside. He refused because the wire was dangerous.

There was evidence that Morton's duty required him to visit the hydrant within a few feet of the sagging wire for the purpose of procuring water for the boilers.

It was the duty of appellant to use reasonable care to keep the premises where Morton was obliged to work in a reasonably safe condition. As in the case of the other defendants, it was for the jury to say whether, under the evidence, the appellant failed to perform that duty, and such failure caused the death.

The demurrer to the evidence was properly overruled.

V. Error is assigned by the appellant to the admission of the evidence of an actuary who testified by mortuary tables to the life expectancy of the plaintiff at the time of her husband's death, and the expectancy

**Life Expectancy.** of the deceased at the time of his death. It was shown that her expectancy was 25.27 years and his expectancy was 23.08 years. This was in accordance with the mortuary tables of insurance companies. It was not objected that these tables were different from the tables provided by statute. It is now settled in this State that mortuary tables are admissible in a case of this kind. The actual recovery by the plaintiff must be the pecuniary loss which she has suffered and will suffer by being deprived of the support of her husband during the remainder of their joint lives, and the only way the jury can estimate the duration of their joint lives is by the mortuary tables of both. It is not proper to base the estimate upon the expectancy of the one who is likely to live the longest, but on the one whose expectancy is least. Of course, as has been said, there can be no absolute certainty as to the duration of anyone's life. The tables are simply evidence for the jury to consider in estimating the damages to accrue, damage which at best is more or less conjectural. [Schlereth v. Railway Co., 115 Mo. 87; Chambers v. Hotel Co., 154 Mo. App. 249, l. c. 260; Stevens v. K. C. L. & P. Co., 208 S. W. 630.]

It is further objected by appellants that the court erred in permitting the plaintiff to testify to her age and her state of health, also to the age of the deceased and his earning capacity, on the ground that there was no allegation as to those matters. It is held by this court that where damage naturally flows from the injury, which is the basis of the suit, as a reasonable consequence of the same, it need not be pleaded. In case of a death claim it is proper to show the condition of health, earning capacity, age, etc., of the party killed, as well as his habits, without pleading those specific facts. [Boyd v. Railroad, 249 Mo. 110, l. c. 126; Boyd v. Railroad, 236 Mo. l. c. 64-65.] The general habits and personal expense of the deceased could be considered by the jury in determining his earning

capacity and contribution to his wife's support. [Bagley, Admr., v. City of St. Louis, 268 Mo. 259, l. c. 264.]

VI. Appellant asserts there were errors in the admission of certain items of evidence on behalf of the plaintiff, where the plaintiff was allowed to state how much of the deceased's wages were given for her support, that he spent his evenings at home, that she paid for his burial expenses, and that he protected her during the years of their married life.

General Objection.

In referring to the pages in the abstract of the record where this evidence was admitted and the objection of the defendant registered, it appears that the only objection in each case was that evidence was "irrelevant and immaterial." A general objection of that character is not sufficient to apprise the trial court and opposing counsel of the particular reason why the evidence is objectionable so as to authorize review here. [State ex rel. v. Diemer, 255 Mo. 336, l. c. 346-350; Hafner Mfg. Co. v. St. Louis, 262 Mo. l. c. 634; Ellsea v. Smith, 273 Mo. l. c. 409; Heinbach v. Heinbach, 274 Mo. l. c. 315.]

VII. Appellant criticises instruction number two, given on behalf of the plaintiff, upon the ground that it didn't require a finding by the jury that the Construction Company knew, or by the exercise of ordinary care could have known, the telephone wire was liable to come in contact with the power wire of the electric company and knew that such a contact would be dangerous.

Knowledge of Danger.

The instruction objected to did require the jury, before finding for the plaintiff, to find existence of the highly charged electric wire and the telephone wire which ran on cross-arms of the same poles, "and that the defendant caused and permitted the telephone wire to become loose and sag dangerously near and to come in contact with said power wire, if any, and to become

charged with said electric current, if any, and conduct said current to a point near the ground and thereby endanger pedestrians on the ground near said wire.''

A finding by the jury that the defendant negligently caused and permitted the condition mentioned is equivalent to a finding that the defendant knew the condition to exist. [Hall v. Mo. Pac. Ry. Co., 74 Mo. 298, l. c. 302.]

Electricity is one of the most dangerous agencies discovered by modern · science and used in conducting power. [Clark v. Railroad, 234 Mo. l. c. 423; Hill v. Union Electric L. & P. Co., 260 Mo. 77.] It would be entirely superfluous to have the jury find that the defendant company knew contact with the high-power wire would be dangerous because it is a matter of common knowledge. That a company engaged, as the Construction Company was, in a business which required the constant use of electric current, could be ignorant of the dangerous character of that agency is not to be supposed.

Appellant cites in support of its position the case of Nephler v. Woodward, 200 Mo. 179. In that case the plaintiff was injured by stumbling upon a hole in the carpet in a dimly lighted theatre. It was held that the jury should be required to find that the defendant knew the hole was dangerous and was likely to cause an injury. In commenting upon that this court said, l. c. 189: ''If a person knows that he has left his cellar door open in a public sidewalk on a dark night he knows that he has set a mantrap.''

This was to illustrate the distinction between a condition which is obviously dangerous so as to charge a party responsible for its existence with knowledge of its dangerous character, and one where such dangerous character must be proven and found by the jury, as the case there under consideration.

VIII.  Instruction number seven given on behalf of plaintiff on the measure of damages was objected

to as not correctly stating the rule by which the jury could estimate the measure of damages. It reads:

"The court instructs the jury that if you find in favor of the plaintiff you will, in assessing her damages, award her such sum, not exceeding ten thousand dollars, as you find from the evidence will fairly and

**Measure of Damages.** justly compensate her for all, if any, pecuniary loss you find from the evidence she has sustained, or will sustain, as a necessary result of the death, if any of Ernest L. Morton."

Instructions similar in form and of like intendment have been approved several times by this court. [Powell v. Railroad, 255 Mo. l. c. 453-456; Mintor v. Brandstreet Co., 174 Mo. 444, l. c. 491; Browning v. Railroad, 124 Mo. 55, l. c. 71-72.] In the case first cited the cases are reviewed at length showing the approval of this court of instructions in that form. While the instruction complained of is entirely general, it is not denied that it is correct as far as it goes. It is only claimed that it is defective in that it is not sufficiently specific in directing the jury as to how to estimate the damages. This, as determined by the cases above cited, was merely a matter of non-direction. The defendant asked no instruction on the measure of damages and is in no position to complain that the jury was not sufficiently instructed upon that subject.

The judgment is affirmed.

*Railey* and *Mozley, CC.*, concur.

PER CURIAM:—The foregoing opinion by WHITE, C., has been adopted as the opinion of the court. All the judges concur; *Williams, P. J.*, in result.