Raymond C. DOUGHERTY, Administrator d/b/n of the Estate of Minnie Cora Dougherty, Deceased, Respondent,

v.

Willard SMITH, Administrator of the Estate of Marilyn Jean Davis, Deceased, Appellant.

No. 25610.

Missouri Court of Appeals, Kansas City District.

May 8, 1972.

Warren D. Welliver, and B. Daniel Simon, Columbia, for appellant; Welliver, Beckett & Simon, Columbia, of counsel.

W. F. Daniels, and Thomas S. Denny, Fayette, for respondent.

PER CURIAM.

This is an action for damages for wrongful death of Gladys Irene Dougherty brought by the administrator of the estate of Minnie Cora Dougherty, deceased, who died at the age of 95 years about six months after the death of her daughter, Gladys, in a collision. Marilyn Jean Davis, whose administrator defended the action, also died in the collision.

A jury returned a verdict for plaintiff in the amount of $14,700.00. At the close of the evidence defendant requested a directed verdict against him for $2,196.27, which was

denied, and which denial is the basis of Point I. A., in that it is asserted that there was no substantial competent evidence of any damage in excess of that amount. Point I. B. asserts that a portion of Instruction No. 3, "In assessing the damages, you may take into consideration any aggravating circumstances attendant upon the fatal injury", is erroneous because of a lack of substantial competent evidence upon which the jury could find that aggravating circumstances existed. By Point II, it is alternatively urged that defendant's motion for new trial should have been sustained, "Because the jury's verdict of $14,700.00 was so excessive as to indicate it was the result of bias and prejudice on the jury's part."

Prior to the voir dire examination it was admitted that Gladys was 62 years of age, died May 8, 1968, as the result of the accident, and left surviving her mother, Minnie Cora Dougherty, who died November 9, 1968, at the age of 95 years. Gladys' funeral bill was $1,527.27. Defendant admitted that his decedent, Marilyn Davis, "was negligent in the driving and operating of her automobile at the time and place mentioned in evidence and is thereby liable in damages, if any, there are for the death of Gladys Dougherty, Deceased."

The collision occurred on a hilltop on Highway 124, known as the Harrisburg Road. Con Wyatt, who lived 10 miles southeast of Fayette, Missouri, had travelled the road many times and on May 8, 1968, was proceeding westerly on it. "Q. Now will you describe the roadway to this jury and the Court as it appears right in front of the Camp Schmidt driveway? A. A little mound, a hill there, you can't see a car coming from the west." Wyatt was going around 55 or 60 miles per hour, and as he approached the Schmidt driveway a white Buick, owned by Mrs. Davis, passed him. "A. She just pulled right around me, and that other car coming up the hill, they hit head-on." The Davis car was on the south (wrong) side. When the cars collided, the Davis car went around and crossed in front of Wyatt and he hit its front end. "Q. You have been over that road many times, have you, Mr. Wyatt? A. Yes, many a time. Q. Now immediately west of the crest of that hill is it possible to see a car? A. No, it ain't. Q. Can you even a see a truck with truck racks on it? A. Can't even see a truck with racks on it. Q. And when can you first see someone that might be west of the crest of that hill? A. Just when he comes up over the brink of it."

Juell Duren, Gladys' sister, lived with her and their mother, Minnie. Gladys had never married nor had she ever left home —she and her mother had always been together. Gladys was a schoolteacher and was on her way to teach school when she died. She earned around $4,200.00 for the nine month period. Minnie had been an invalid since 1965 and Gladys cared for her. A nurse was provided during school hours, the cost of which was shared by Gladys and Juell. Every other expense connected with the home was so shared, a total of $223.00 per month, one-half of which was paid by Gladys.

■ Defendant's motion for directed verdict against himself is: "I would move the Court to direct a verdict against the defendant in the amount of $2,196.27, the amount of damages proved by the plaintiff following our admission of liability. This represents the funeral bill of $1,527.27 and the sum of $111.50 per month for six months, $669.00." The determination of Points I. A. and I. B. turns upon whether the jury is limited to pecuniary loss. "Concededly, aside from regard to aggravating and mitigating circumstances, the recovery of damages under the foregoing section [Section 537.090] in this action must be limited to the pecuniary loss to the beneficiaries." Richeson v. Hunziker, Mo., 349 S.W.2d 50, 52 [1]. In measuring pecuniary loss, the expectancy of both the beneficiary and the deceased may be considered, and it is proper to base the estimate upon the one whose life expectancy is the least. McIntyre v. St. Louis & San Francisco Ry.

Co., 286 Mo. 234, 227 S.W. 1047, 1054 [14]. Compare Crabtree v. Kurn, 351 Mo. 628, 173 S.W.2d 851, 861 and cases cited. Or, on the other hand, is there evidence of aggravating circumstances, permitting the jury to assess additional damages above pecuniary loss under the statute?

■ Defendant correctly says that an increase over the pecuniary damages is permissible only if the decedent, had he lived, would have been entitled to punitive damages, as where there is a showing of "willful misconduct, wantonness, recklessness, or a want of care indicative of indifference to consequences." Williams v. Excavating & Foundation Co., 230 Mo.App., 973, 93 S.W.2d 123, 127 [8]. It is argued that Marilyn was negligent, but that the evidence "did not even begin to establish the kind of 'willful misconduct, wantonness, recklessness or want of care indicative of indifference to consequences' which must be present before the issues of punitive damages or 'aggravating circumstances' can be submitted to the jury."

■ Con Wyatt's testimony that Marilyn passed him when he was going around 55 to 60 miles per hour, supports an inference that she was going more than that. This was done as he approached the Schmidt driveway (shown in a photograph). Immediately to the west of the crest of the hill it is not possible to see an approaching car, or even a truck with racks. Under the cases, like evidence supports an instruction on aggravated circumstances under Section 537.-090. See May v. Bradford, Mo., 369 S.W.2d 225, 229, where defendant could see the northbound car in which decedent was a passenger 1800 to 2000 feet away before its occupants could see him, yet he persisted in efforts to pass a Studebaker, and when he did so he had the northbound lane substantially blocked. The court held, "The jury could reasonably have found from the evidence that the conduct and acts of the defendant Bradford were reckless and wanton and in gross disregard of the rights and safety of the occupants of the Buick auto-

mobile and others on the highway." See also Richeson v. Hunziker, Mo., 349 S.W.2d 50, 53 [3], where a portion of the damage instruction permitted the jury to take into consideration the aggravating circumstances, if any (as here), and it was likewise contended that there was no evidence to support the instruction. Under the circumstantial evidence, it was held that the instruction was properly given, it being sufficient to show that defendant was driving fast, 60 or 65 miles per hour, on a curve, struck a windrow and skidded some 600 feet. There was not the slightest suggestion in the evidence that the windrow was not visible or that it was in any way obscured from the view of an approaching vehicle. For a discussion of the foregoing two cases, and the matter of submitting aggravating circumstances to the jury, see Tripp v. Choate, Mo., 415 S.W.2d 808, 813. In the circumstances here, it is of no matter that decedent Marilyn was not shown to have been familiar with the road and its hazards, as argued. Wyatt's testimony is sufficient to show and the photographs show, that a person travelling westerly should know that a hill was being approached of such a slope that an oncoming car could not be seen. Yet, Marilyn at her speed in excess of 55 or 60 miles per hour, as the jury could find, passed Wyatt at a time when she should have known there was a hazard of colliding with an unseen oncoming vehicle. Such action was in wanton, reckless disregard of the safety of Gladys and other persons on the highway. There was thus evidence for the jury to assess damages in excess of the actual pecuniary loss to plaintiff, and of course there was no error permitting the jury to do so under Instruction No. 3.

■ No question of mere excessiveness of the verdict is presented by Point II. The claim is that the $14,700.00 verdict is so excessive as to indicate that it was the result of bias and prejudice on the jury's part. Bias and prejudice of the jury may not be inferred from the size of the verdict standing alone. See Bower v. Hog Builders, Inc., Mo., 461 S.W.2d 784, 805, and

cases cited. There is nothing here in the record to indicate that the jury was actuated by improper motives, or that there was a "clear absence of the honest exercise of judgment." Beggs v. Universal C. I. T. Credit Corporation, Mo., 409 S.W.2d 719, 724 [8–13]. "The trial court may infer bias and prejudice from the size of the verdict alone * * *. 'It is not the function of an appellate court to pass on the weight of the evidence in a jury case and that is the reason an appellate court will not make a determination of bias and prejudice of the jury on amount of the verdict alone.' Nussbaum v. Kansas City Stock Yards Co. of Maine, Mo.Sup., 359 S.W.2d 335, 341." Reynolds v. Arnold, Mo., 443 S.W.2d 793, 801. See also Tripp v. Choate, supra. Point II as presented is without basis for interfering with this verdict, or in ordering a new trial.

The judgment is affirmed.