Blaine HINES and Anna Maude Hines, Plaintiffs-Appellants,

v.

James Henry SWEET, Defendant-Respondent.

No. 10098.

Missouri Court of Appeals, Springfield District.

May 12, 1978.

Motion for Rehearing or to Transfer Denied June 6, 1978.

Application to Transfer Denied July 24, 1978.

L. R. Buehner, Buehner & Buehner, Joplin, for plaintiffs-appellants.

Jon Dermott, Ronald E. Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendant-respondent.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

STONE, Judge.

This is a second appellate chapter in the above-captioned case, which was instituted by plaintiffs Blaine Hines and Anna Maude Hines, as the natural parents of Sally Ann Alderman (nee Hines), against defendant James Henry Sweet, for the recovery of

damages on account of the allegedly wrongful death of Sally on May 1, 1970, by reason of injuries sustained by her in a vehicular collision on April 22, 1970. Sally's husband having failed to sue within one year after her death, her parents instituted this action for wrongful death on December 7, 1971. § 537.080(2), RSMo 1969, V.A.M.S. Upon trial to the court and jury in October 1973, judgment for defendant Sweet was entered upon a unanimous jury verdict; but in January 1974, plaintiffs' motion for new trial was sustained for error in an instruction given at defendant's request. Upon appeal to this court, that order was affirmed and the cause was remanded. *Hines v. Sweet,* 518 S.W.2d 710 (Mo.App.1975).

The subsequent retrial resulted in a unanimous jury verdict for plaintiffs Hines and assessment of plaintiffs' damages at $5,000, for which judgment was entered. Plaintiffs again appeal, presenting only a single point directed to the alleged inadequacy of the verdict. Before specifically treating of that point, our study of the transcript prompts the following observations.

Plaintiffs Blaine and Anna Maude Hines had two sons and two daughters. At the second trial presently under review, Anna Maude, the mother, testified that Brenda, the oldest child, was twenty-one months older than Sally, and that *Sally was* four years older than Phillip and *six and one-half years older than Frank.* And, the father's testimony at the second trial on *May 27, 1975,* disclosed that Frank was *then twenty-two* years of age. From the facts thus revealed by *plaintiffs' testimony* at the second trial, it necessarily follows that, when Sally died on *May 1, 1970,* slightly more than five years prior to that trial, Frank then was seventeen years of age and Sally was between twenty-three and twenty-four years of age.

However, in carefully reviewing the transcript, we note that in the course of reading into evidence life expectancies from one of the mortality tables appearing in 42 V.A. M.S. at page 801, plaintiffs' counsel stated that Frank *"was at the time of this incident* [resulting in Sally's death], *17 years old,"* and that *"Sally . . . was 19 years of age at the time of her death* [9 days later on May 1, 1970]." [1] (All emphasis herein is ours.) Likewise in plaintiffs-appellants' brief filed in this court, counsel stated no less than three times (twice in the statement of facts and once in the argument section) that Sally was 19 years of age at the time of her death, and in each instance also has declared in the same paragraph that Frank was then 17 years of age.

A meticulous search of the transcript reveals no testimonial support for the assertions of plaintiffs' counsel that Sally was 19 years of age at the time of her death. The only evidence of Sally's age, other than the afore-mentioned testimony of plaintiff Anna Maude Hines, the mother of Sally and Frank, was Sally's birth certificate received in evidence as plaintiffs' exhibit 7. Since that certificate obviously would have afforded reliable, if not conclusive, proof on the factual conflict concerning Sally's age, it was the duty of plaintiffs-appellants to file that exhibit with the clerk of this court which has not been done. Missouri Court of Appeals Rules, Springfield District, Special Rule 4; *Ryan v. Equitable Life Assurance Society of U. S.,* 560 S.W.2d 884, 886–887(3) (Mo.App.1977); *Kewanee Oil Co. v. Remmert-Werner, Inc.,* 508 S.W.2d 23, 27 (Mo.App.1974); *Lange v. Baker,* 377 S.W.2d 5, 7(4) (Mo.App.1964).

In view of the utilization of and reliance upon actuarial tables in the presentation of plaintiffs' case, and the emphasis upon the purported special relationship between Sally and Frank, we have been moved to examine the entire record in this court on the prior appeal, as we are authorized to do. *Collins v. Leahy,* 347 Mo. 133, 137–138, 146 S.W.2d 609, 611(2) (1940); *Hardin v. Hardin,* 512 S.W.2d 851, 854–855(2, 3) (Mo.App. 1974); *Langdon v. Koch,* 435 S.W.2d 730,

1. The obvious effects of lowering Sally's age by some four or five years would be (a) to increase her life expectancy as reflected in the mortality tables and (b) to narrow the age gap between Sally and Frank.

733(4) (Mo.App.1968). See also *Wessels v. Smith,* 362 S.W.2d 577, 578(3) (Mo.1962).

From that examination of the transcript on the *first* appeal docketed as our Case No. 9664, we glean the following. In the opening statement of plaintiffs' counsel, we find the representation and assurance that "[t]he evidence will be that, as I say, *Sally was just short of 24 years of age when she died,* and we will have evidence about what her life expectancy was . . . ." The evidentiary portion of the transcript on appeal was abbreviated by the fact, as recited in the transcript, that "[t]he testimony of certain witnesses has been omitted from this transcript by agreement of counsel." Accordingly, none of the testimony by members of the Hines family was included. However, in the closing argument of plaintiffs' counsel which was reported, we find the positive statement (presumably conforming to the untranscribed evidence) that: "Sally was seven years old when Frank arrived. Now, you folks, in your own experience, know what the coming of a baby, a new baby in the family would be to a seven year old girl."

■ Similarly, in his opening statement to the jury at the *first* trial, defendant's counsel told the jury that he anticipated the evidence would show that at the time of accident Sally "was an adult, she was 23 years of age," and in his closing argument advised the jury that "you must bear in mind that this was a young woman, 23 years of age." Even though appellants' adhibition of mortality tables and their presentation and argument in the *second* trial now under review apparently were predicated, at least to some extent, on the metachronism that Sally was born *nineteen* years before the accident which took her life in 1970, defendant-respondent neither objected at trial to the assumption by plaintiffs' counsel that Sally was nineteen at the time of her death nor appealed from the judgment nisi. Hence, we proceed to treat of the single point in plaintiffs-appellants' brief on this appeal, which was directed to the alleged inadequacy of the verdict and charged that the trial court "committed prejudicial error in excluding proposed testimony from the witness Dr. Patterson, and the proposed witness Robert Dieckhoff, that Frank Hines, retarded son of plaintiffs [Hines] and brother of the deceased Sally Ann Alderman, needed care of a type offered by group care homes and that such care was available in the area at a cost of approximately $275 per month, because such evidence was admissible . . . to establish *damages to the plaintiffs that they were reasonably certain to sustain* in the future as a direct result of the death of their daughter, whom the evidence established was reasonably certain to render service to her parents or either of them by furnishing such needed care to her retarded brother."

Frank lived with his parents (plaintiffs Hines) in their home on a tract of "just under 40 acres" in the "north edge" of Newton County. At the time of the second trial in May 1975, both plaintiffs were 63 years of age and Frank was 22 years of age. Aside from the fact that plaintiff Blaine "used to could castrate pigs" but no longer could do so, he led a "normal life" and his health was "all right." Plaintiff Anna Maude forthrightly declared "I am in good health."

Plaintiffs' witness, Dr. Ronald R. Patterson, then medical director of the Joplin Regional Diagnostic Clinic, pictured Frank as a Mongoloid who physically was "a healthy young man" but mentally had an "intelligence" level of "approximately age five" and accordingly needed supervision like any other child of that age.

In response to the interrogative guidance of their counsel, plaintiffs Blaine and Anna Maude testified in detail concerning Sally's deep affection for her retarded brother and her patient and continuing efforts to help him improve his speech and develop his limited capabilities, which need not be detailed here in view of the thrust in the above-quoted single point on appeal presented by plaintiffs-appellants.

None of the seven cases cited by plaintiffs-appellants involved a factual situation similar to the case at bar, and none of those

cases was an action by parents for the recovery of damages by reason of the death of a child. In fact, six of those seven cases are cited by plaintiffs-appellants to the single long-settled proposition that, *if the right to recover damages is established,* difficulty in calculating or measuring the exact amount of damages will not prevent some recovery.[2]

We recognize that family circumstances and finances may be considered in a wrongful death action by the parents of a deceased child and that recovery may be had for the parents' pecuniary loss occasioned by the child's death;[3] and we are cognizant that such pecuniary loss embraces not only the monetary contribution, if any, of the deceased but also such elements of pecuniary value as enter into the domestic relationship of parent and child.[4]

The seventh and final case cited by counsel for plaintiffs-appellants, namely, *Lebrecht v. United Rys. Co. of St. Louis,* 237 S.W. 112, 114(2) (Mo.1921), stated and applied the following principle which was controlling in *Lebrecht* and which is quoted and recognized in instant plaintiffs-appellants' brief as controlling here, i. e., "[t]o justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury."[5] Otherwise stated, this principle with which we agree is that recovery for future conditions and related expenditures is limited to those reasonably certain to occur, and that those which are merely possible, foreseeable, or even probable provide no basis for recovery, because " '[c]onsequences which are contingent, speculative, or merely possible are not proper to be considered by the jury in ascertaining the damages, for it would be plainly unjust to compel one to pay damages for results that may or may not ensue, and which are merely problematical.' " *Coffer v. Paris,* 550 S.W.2d 915, 918(5) (Mo. App.1977); *Hahn v. McDowell,* 349 S.W.2d 479, 482(2, 3) (Mo.App.1961).[6]

**2.** *Shechter v. Brewer,* 344 S.W.2d 784, 791 (Mo. App.1961) ("[W]here it is certain damage has resulted, uncertainty as to amount will not preclude recovery"); *Naeger v. Naeger,* 339 S.W.2d 492, 498 (Mo.App.1960) ("[T]he uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount"); *Moore v. St. Louis Southwestern Ry. Co.,* 301 S.W.2d 395, 403 (Mo.App.1957) ("[T]he rule against recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure and extent. . . . [W]here substantial damages are established but the amount, so far as susceptible to pecuniary admeasurement, is either entirely uncertain or extremely difficult of ascertaining, [that fact] will not prevent recovery"); *Boston Securities, Inc. v. United Bonding Insurance Co.,* 441 F.2d 1302, 1304 (8th Cir. 1971); *Brink's, Inc. v. Hoyt,* 179 F.2d 355, 360–361 (8th Cir. 1950); *Hawkinson v. Johnston,* 122 F.2d 724, 731 (8th Cir. 1941) (" 'The rule that damages which are uncertain or contingent cannot be recovered . . . only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount.' ").

**3.** *Richeson v. Hunziker,* 349 S.W.2d 50, 52–53(1–2) (Mo.1961); *McCrary v. Ogden,* 267 S.W.2d 670, 676 (Mo.1954); *Dougherty v. Smith,* 480 S.W.2d 519, 520 (Mo.App.1972); *Anderson v. Robertson,* 402 S.W.2d 589 (Mo.

App.1966). *See generally Martin v. Sloan,* 377 S.W.2d 252, 265(20) (Mo.1964); *Patison v. Campbell,* 337 S.W.2d 72, 75(2) (Mo.1960); *Lynch v. St. Louis Public Service Co.,* 261 S.W.2d 521, 524(9) (Mo.App.1953).

**4.** *Hertz v. McDowell,* 358 Mo. 383, 389–390, 214 S.W.2d 546, 549–550(5, 6) (banc 1948). *See also Talbert v. Chicago, R. I. & P. Ry. Co.,* 321 Mo. 1080, 1089, 15 S.W.2d 762, 765(5) (banc 1929); *Bolino v. Illinois Terminal R. Co.,* 355 Mo. 1236, 1248, 200 S.W.2d 352, 359 (1947); *Schwarz v. Gage,* 417 S.W.2d 33, 36(1) (Mo.App.1967).

**5.** To the same effect, see 25 C.J.S. Damages § 26, p. 678, quoted in plaintiffs-appellants' brief, to wit:

"Compensation cannot be based on a mere conjectural probability of future loss. So an award for future disability cannot be based on mere conjectures and probabilities. Where a plaintiff claims compensation for future consequences of an injury ordinarily he must prove with reasonable certainty that such consequences will happen."

**6.** *See also Jenkins v. Jenkins,* 453 S.W.2d 619, 621 (Mo.App.1970); *Zoeller v. Terminal Railroad Ass'n of St. Louis,* 407 S.W.2d 73, 78(3) (Mo.App.1966); Kirby, *Tort Actions and the Economic Expert,* 31 Mo.B.J. 25, 30 (1975) ("Expert testimony as to expected future con-

The transcript of the second trial now under review discloses that both plaintiffs and John Alderman, husband of the deceased, testified in some detail concerning Sally's assistance around her parents' home and farm, the relationship between Sally and her retarded brother Frank, and the care and attention Sally gave to Frank. Thus, the excluded "proposed testimony from [plaintiffs'] witness Dr. Patterson, and the proposed witness Robert Dieckhoff," to which plaintiffs' counsel refer in their hereinbefore-quoted point, would have been material only to the factual issue as to the need for and cost of institutionalizing Frank. However, the overwhelming weight of the evidence negated the suggestion of plaintiffs' counsel that Frank would be placed in an institution within the foreseeable future.

The health of Frank and his parents was good at the time of the second trial. Dr. Patterson testified that Frank "had none of the usual complicating [physical] factors" normally associated with Mongoloidism, and that "Frank is a healthy young man." Likewise, Anna Maude Hines, Frank's mother, declared that "[h]e [Frank] is in good health"; and, as hereinbefore noted, Mrs. Hines similarly averred without reservation or qualification, "I am in good health," and Mr. Hines agreed that he led a "normal life" and his health was "all right." [7] Frank had not been institutionalized either before or after Sally's death; and, as a matter of fact, both Blaine and Anna Maude Hines testified that they had never "considered," "discussed," or "even thought of" placing Frank in an institution. From the foregoing portrayal by plaintiffs' own testimony, we concur with the trial court that it was far from reasonably certain that Frank would need institutionalization, must less at what time or under what circumstances.

The evidence on the cost of institutionalization was similarly indefinite, if not inconsistent. Mr. Dieckhoff, a psychiatric social worker whose testimony at the first trial was, following the second trial, appended to plaintiffs' motion for new trial as an offer of proof and hence is before us in the second-trial transcript, initially stated that the monthly cost of institutionalization in the type of facility used or employed for the care of Mongoloids "goes from $200 to $300, depending on the rating which we give to the home," subsequently stated that in the only such facility known to him in that territory the "base rate [was] $230" per month, and finally disclosed on cross-examination that the cost "depends on what the family can, you know, pay towards that home" and that, "if a retarded child comes out of an indigent type home, probably the family wouldn't be charged anything."

sequences of the injury is valid if they are reasonably certain to occur in the ordinary course of nature."). For cases requiring damages for future expenses or losses to be established to a degree of *reasonable certainty* in a variety of factual situations, *see* the following cases and those cited therein: *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573, 589(28) (Mo.banc 1978); *Clark v. Mississippi River & B. T. Ry.*, 324 Mo. 406, 419, 23 S.W.2d 174, 179(11, 12) (1929); *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688, 691(4) (Mo.App.1977) ("[t]he pecuniary loss must be determinate and must be proved with reasonable certainty, rather than left to speculation"); *Chaussard v. Kansas City Southern R. Co.*, 536 S.W.2d 822, 828(7) (Mo.App.1976); *Thienes v. Harlin Fruit Co.*, 499 S.W.2d 223, 229–230(8, 9) (Mo.App. 1973); *Kramer v. May Lumber Co.*, 432 S.W.2d 617, 621–622(4, 5) (Mo.App.1968); *Moore v. St. Louis Southwestern Ry. Co.*, 301 S.W.2d 395, 402(6, 7) (Mo.App.1957); *Waddell v. Metropolitan St. Ry. Co.*, 113 Mo.App. 680, 687, 88 S.W. 765, 767(7) (1905).

7. Plaintiffs' evidence was that, at the time of the trial under review, plaintiff Blaine's life expectancy was 18.90 years and plaintiff Anna Maude's life expectancy was 22.49 years. As the trial court commented and counsel agreed, in no event could plaintiffs recover for possible care of Frank during any period beyond plaintiffs' life expectancy or death. *McIntyre v. St. Louis & San Francisco Ry. Co.*, 286 Mo. 234, 258–259, 227 S.W. 1047, 1054–1055(14) (1921), cert. den. 255 U.S. 573, 41 S.Ct. 376, 65 L.Ed. 792; *Morton v. Southwestern Tel. & Tel. Co.*, 280 Mo. 360, 379, 217 S.W. 831, 835(8) (1920); *Dougherty v. Smith*, 480 S.W.2d 519, 520(1) (Mo.App.1972). See *McCord v. Schaff*, 279 Mo. 558, 566, 216 S.W. 320, 321–2(4) (1919); *Stevens v. Kansas City Light & Power Co.*, 200 Mo.App. 651, 654, 208 S.W. 630, 631(4) (1919).

In their motion for new trial and on appeal, plaintiffs-appellants complain that the judgment for $5,000 was grossly inadequate and that they were entitled to recover a substantially larger sum on the theory that Frank would need to be institutionalized at a projected cost of "approximately $275.00 per month," which Sally would have provided. This, notwithstanding the fact that plaintiff Blaine admitted on cross-examination that from the time of her marriage until her death Sally had contributed nothing to their support and that plaintiff Anna Maude likewise stated that Sally had made no "financial or money" contribution to either parent.

Plaintiffs-appellants do not assert that Sally would have had any legal obligation to have provided or paid for Frank's institutionalization at any time, and there is no evidence she would have been able to have paid for such institutionalization, if and when it might be needed. Furthermore, the record neither suggests nor indicates that, should Frank be institutionalized during the lifetime of his parents, Sally would pay or be requested to pay for such institutionalization, particularly so in view of the above-noted disclosure in plaintiffs' offer of proof by Dieckhoff that the cost depends on what the family can pay.

In fine, because not only Frank's institutionalization but also payment therefor by Sally were contingent on several factors and consequences which were too remote, indefinite, uncertain and speculative to rise to the required standard of reasonable certainty, the trial court did not err in any respect assigned in the hereinbefore-quoted single point relied on.

The judgment is affirmed.

BILLINGS, C. J., and TITUS, J., concur.