## NORFOLK & W. RY. CO. v. BECKETT.

(Circuit Court of Appeals, Fourth Circuit. July 27, 1908.)

No. 795.

1. MASTER AND SERVANT—INJURY TO SERVANT—UNSAFE PLACE TO WORK.

It is negligence and a breach of its duty to its employés for a railroad company to build a standpipe so close to its track as to endanger employés on passing trains when engaged in the performance of their duties, and such employés do not assume the risk from such structure merely because they know of its existence and general location.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 662.]

2. SAME—LIABILITY OF MASTER—ASSUMED RISK.

Plaintiff, who was conductor of a freight train on defendant's road, while the engine of his train was taking water at a station in the night, went in to send in reports in the course of his duty. When he came out the train was moving, and he started to climb upon a car by the side ladder provided for that purpose, when he was struck by a spout or standpipe, knocked from the car, and seriously injured. There was no caboose on the train, and plaintiff was required to be on top of the cars to act as a brakeman. He was not well acquainted with the road at that point, and, while he knew there was a standpipe and its general location, he did not know that it was so near the track as to be dangerous to a person in his position. Held, that defendant was negligent in so placing

it, and that plaintiff did not assume the risk therefrom, nor was he chargeable with contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 662, 707.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. SAME—DUTY OF CARE ON PART OF SERVANT.

It being the duty of a master in the first instance to furnish a servant with a reasonably safe place wherein to work, the servant has the right to assume that such duty has been performed, and is not required to exercise reasonable care to discover dangers, but is chargeable with knowledge only of such defects as are plainly observable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 710–714.]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Bluefield.

A. W. Reynolds (Joseph I. Doran and Theodore W. Reath, on the briefs), for plaintiff in error.

Harold A. Ritz and Joseph M. Sanders (Sanders & Crockett, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

PRITCHARD, Circuit Judge. This is an action brought for the recovery of damages on account of personal injuries sustained by the plaintiff below, James H. Beckett, resulting in the loss of a leg while employed by the defendant below, the Norfolk & Western Railway Company, as a freight conductor. The case was tried at October term, 1907, of the Circuit Court of the United States for the Southern District of West Virginia, at Bluefield, and a verdict was rendered in favor of the plaintiff below for the sum of $10,000. The defendant in error had been running over that part of the road where he was injured but a short time. The facts, substantially, are:

"On the 14th day of November, 1902, he (Beckett) was called to go to Bluefield, and was started out with a train of about 45 cars, 5 of which he set off and left at Vivian. When he reached Vivian, he received an order to run an hour late, on account of having been detained in setting off the cars there. Running on the order which he had received, he reached Morgan, a short distance east of Vivian, and, when the train stopped for the engine to take water, he went into the office at Morgan to send a message to the superintendent, informing him as to the cause of the delay, and while he was laying out, and also to send a message to Coaldale, concerning a car which he was to get on his way to Bluefield, all of which he was required by the company to do, and which it was his duty to do. He gave the messages to the operators, and the train started while he was at the office, and he came out and caught the train and was climbing up on the side of a box car, on a ladder, placed on the side of the car for the purpose of getting upon the car, and while so climbing up the car, and when he had gotten nearly to the top of the car, a portion of his body projecting above the top, he was struck by a water column or standpipe, standing by the side of the track about 30 or 40 yards east of the station, and was knocked between the cars, fell to the ground, and the cars ran over him and cut off his left leg, between the ankle and the knee; thence he was taken to the hospital at Bluefield and his leg was reamputated."

The first question to be determined is:

"Was it negligence of the master to erect and maintain the water column or standpipe which struck the defendant in error at the point at which it is erected and maintained?"

It is a well-settled principle of law that it is the duty of the master to furnish the servant with a reasonably safe place in which to work, and the servant may assume when he enters upon his employment that the master has performed the duty thus enjoined upon him.

It appears from the evidence that the standpipe which occasioned the injury in this instance was set so near the track that it was impossible for a person occupying the position that the plaintiff did on that occasion to pass it without injury. While the evidence shows that trains of which the defendant in error was in charge had frequently taken water at Morgan, it does not appear that the defendant in error had ever attempted to board a freight train at that point prior to the time of his injury, or that his attention had ever been called to the fact that the standpipe was too close to the track to permit one to pass safely on the side of the box car. However, it is insisted by the plaintiff in error:

"That there was no negligence in placing the standpipe in the position it occupied at the time the defendant in error was injured; that it was the duty of the defendant in error to have acquainted himself with the dangers incident to this standpipe; that under the circumstances proved in the case it was gross negligence on the part of the defendant in error to attempt to ascend the car upon a side ladder while the train was in motion and when he knew that he was approaching this standpipe; that the defendant in error had no right to assume that the standpipe was at a sufficient distance to permit him to pass in safety in the position which he occupied; that there was no necessity that he should have thus exposed himself to danger in the discharge of his duties; that he knew that the position he occupied was a dangerous one; that he was liable to come in contact with objects along the side of the road; and that he assumed all of the dangers incident to the dangerous manner in which he chose to get on board of his train."

This contention might be true as to obstructions placed so near the track as to be dangerous without the knowledge or consent of the master and when he had had no opportunity to acquaint himself with the situation.

In the case of Choctaw, Oklahoma & Gulf Railroad Co. v. McDade, 191 U. S. 67, 24 Sup. Ct. 25 (48 L. Ed. 96), the court, in discussing this phase of the question, among other things, said:

"It is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ."

Ordinarily, the conductor of a freight train is provided with a caboose in which to ride whilst the train is in motion; but it should be borne in mind that the train on this occasion did not have a caboose, and that, among other duties, the conductor was at intervals required to perform those of a brakeman. Therefore, when we come to consider the question as to whether the conductor was in the discharge of his duties at the time he was injured, we are reminded that the top of the car was the only place provided by the master whereon he could ride, and, even had this not been the case, the fact alone

that he was required to act as brakeman would necessitate his presence on the top of the car while the train was in motion.

On this occasion the train had stopped at Morgan in order to take on coal and water, and it appears that the defendant in error had gone to the dispatcher's office to report to the superintendent, thus performing a duty required of him by the rules of the company, and while in the performance of such duty the train started to leave the station, and the conductor immediately proceeded to board his train by climbing the side ladder, the only means provided by which he could reach the position he was required to occupy while the train was in motion. When the train started he was confronted with a situation which involved the performance of a plain duty. The duty thus imposed was imperative, and there was no alternative. To say that it was not his duty to accompany the train which had been placed under his control by the master, would be unjust, and under these circumstances it cannot be insisted that the defendant was acting contrary to the orders of the company or doing anything inconsistent with the faithful performance of his duty. If the conductor had on this occasion refused to board his train as it pulled out, and thus permitted the same to proceed on its way, it would have been tantamount to an abandonment of the trust reposed in him as the captain of the train and a flat refusal to perform his duty as required in that respect. It therefore seems clear to us, under all the circumstances, that the conductor was engaged in the performance of his duty in attempting to go upon the top of the car by climbing the ladder which had been provided by the master for that express purpose, and this is especially true in view of the fact that no other means were provided by which he could have reached any portion of the train wherein he was required to perform the duties incident to the relation which he sustained to the master.

That the plaintiff had seen the standpipe in question and knew its location is not disputed, but there is not a scintilla of evidence to show that he ever saw a box car pass it so as to be able to observe the space between it and the car, nor was there any evidence to show that he had ever passed it while on a box car, or that he had ever seen any one attempt to climb the ladder at a time when the car was passing this particular point. In other words, he had knowledge of the existence of the standpipe and its relative position to cars while passing it in a general way, but there is nothing to show that he had any knowledge as to the increased hazard resulting from the close proximity of the standpipe to the center of the track.

In the case of Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382, in discussing this phase of the question, among other things, it is said:

"Knowledge of the increased hazard resulting from the dangerous proximity of the scale box to the north rail of track No. 2 could not be imputed to the plaintiff simply because he was aware of the existence and general location of the scale box."

As we have already said, the master owes to the servant the absolute duty of furnishing a reasonably safe place wherein to work,

and the servant when entering upon employment may assume that a reasonably safe place has been furnished for that purpose. In the case just quoted it is held that the knowledge of an attendant danger in a case like the one at bar cannot be imputed to the plaintiff simply because he knew of the location of such attendant danger. To establish a different rule would be to abrogate the rule which requires the master to furnish the servant a reasonably safe place wherein to work, and, while it is the rule that one seeking employment assumes the risk incident thereto, the rule is predicated upon the principle that in the first instance the master will, by exercising that care and caution which devolve upon a prudent person, provide a reasonably safe place wherein the servant is to work, and in doing so it is undoubtedly the duty of the master to provide against erecting or maintaining any kind of fixtures which must of necessity result in injury to the servant in the performance of the duties incident to his employment, and which he is liable, under emergencies like the one on this occasion, to be called upon to perform, and while the servant (once the master performs his duty) assumes those risks that are common and incident to his employment in a particular line, yet this does not mean that he assumes risks which are incident to the negligence of the master in the first instance. In other words, if the master has complied with the rule as to the degree of diligence imposed upon him, then the servant assumes the risk incident to his employment; but here there was a failure on the part of the master to furnish a reasonably safe place wherein the servant was called upon to work by placing the standpipe at such a distance from the center of the track as to permit the servant under such circumstances to board a moving train in safety in such emergency.

In the case of Riley v. W. Va. Cent. & P. R. Co., 27 W. Va. 145, the court said:

"It is the duty of a railroad company not only to furnish a reasonably well-constructed and safe railway and track for the use of its employés, but it must also exercise continued supervision over the same and keep them in good and safe repair and condition."

In that case the plaintiff, while acting as a brakeman in the employ of the defendant on a train consisting of an engine and tender, was struck by a stump standing along the railroad and near the track. The stump originally stood some distance from the track, but, being in loose loamy soil, had by a slide produced by heavy rains slipped so near the track as to render it dangerous for one occupying the position the brakeman did on that occasion to attempt to pass the point where it was located.

Among other things, it is insisted by the plaintiff in error that, if the conductor on this occasion had stepped round the end of the car on the sill, he could have avoided the accident. This is a degree of diligence which we do not think he was called upon to exercise under the peculiar circumstances by which he was surrounded on that occasion. When he came out of the dispatcher's office the train was in motion, the night was dark, and, in order to perform the duties incident to his employment, he was required to act promptly, and under

these circumstances to hold that he was guilty of contributory negligence in that he neglected to anticipate a danger of which he had no actual knowledge, by stepping round to a point where he was not required to go in order to reach the place where he was to perform the duties incident to his employment, would be unreasonable and without precedent. The ladder which the defendant in error was ascending was placed upon the side of the car to be used by him for the purpose of ascending the car when leaving the station, and at other times when he was required to board the car. Then to require him to do this and erect and maintain at the very place or near the place where this duty was to be performed a standpipe so near the railroad as to endanger his person in the performance of this duty we think was negligence, in that it was a failure to provide a safe place for him to work, because the work which he was then performing was required to be done then and there, and in this instance the car was in motion, he had no time or opportunity to take a survey of the surroundings to see what dangers were near, and this adds strength to the position that, being in a situation of that sort, it devolved more imperatively upon the railroad company to provide for his safety.

We now come to consider the various assignments of error. The first assignment is as to the action of the court in giving the instructions offered on behalf of the plaintiff below. The first instruction submitted to the jury involves the question whether at the time the plaintiff received the injury he was engaged in his duties as conductor and in doing so exercised ordinary care, and the jury was told that they should find for the plaintiff, unless they should also find that the plaintiff knew the standpipe was in such position as to be unsafe, or that he knew the position of the standpipe, and that from its position it was plainly observable to be unsafe. It is insisted by the plaintiff in error that this instruction under the evidence was improper, inasmuch as the evidence showed that he negligently assumed a position of known danger, and that therefore this instruction should not have been submitted to the jury. We fail to find anything in the record from which it can be inferred that the plaintiff knew of the dangerous proximity of the standpipe. From the evidence it is shown that he only had a general knowledge as to the location of the standpipe, and there is nothing in the record which shows that from the location of the standpipe it was plainly observable to be unsafe. In other words, in order to bring this case within the class of cases wherein it is held that the servant assumes the risk incident to his employment, it must appear that the danger was plainly observable, and in this instance, inasmuch as there is want of proof to sustain the contention of the plaintiff in error, we are inclined to the opinion that the court did not err in submitting the instruction complained of in the first assignment of error.

In the case of Choctaw, O. & G. R. Co. v. McDade, supra, it is said:

"The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employé is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This

rule is subject to the exception that where a defect is known to the employé, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of the knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and, in such case, cannot recover."

We have carefully considered instruction No. 2 given for the plaintiff below, and we are of opinion that the contention of the plaintiff in error is without merit. This instruction practically embodies the statement of the law as contained in the case of Choctaw, O. & G. R. Co. v. McDade, supra.

As to instruction No. 3, which is to the effect that the plaintiff below had the right to assume that the defendant had exercised reasonable care in the preparation of the place wherein he was to work, and that he was not required to exercise reasonable care to acquaint himself with the condition thereof, but that under the circumstances he assumed the peril and extra hazard not incident to his employment only for defects known or plainly observable by him, we think is correct.

In the McDade Case, cited, the court below charged the jury that the plaintiff could not recover if he knew of the position of the waterspout, or by the exercise of ordinary care on his part ought to have known of it. The Supreme Court, in discussing this phase of the question, says:

"The charge of the court upon the assumption of risk was more favorable to the plaintiff in error than the law required, as it exonerated the railroad company from fault if in the exercise of ordinary care McDade might have discovered the danger. Upon this question, the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employé."

In other words, it being the duty of the master in the first instance to furnish the servant a reasonably safe place wherein to work, the servant is not required to exercise reasonable care to discover dangers; but he is chargeable with knowledge of any and all defects that are plainly observable, and he assumes all risks incident thereto.

We do not think it necessary to consider seriatim the remaining assignments of error, inasmuch as we have discussed generally the propositions involved therein and are of opinion that the rulings of the court below on the various propositions were correct.

This case was tried with great care and ability by the learned judge below, and all controverted questions of fact were submitted to the jury, and we think the findings of the jury were justified by the testimony, and that there was no error in the principles of law enunciated by the court.

The decision of the court below is affirmed.

Affirmed.