JOSEPH S. McINTYRE, Administrator of Estate of WALTER LEE CLARK, v. ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, Appellant.

Division Two, January 10, 1921.

1. **ADMINISTRATOR: Appointment: Renunciation by Wife: Collateral Attack.** A defendant, sued by the administrator for damages for the negligent killing of decedent, cannot dispute plaintiff's legal capacity to sue on the mere ground that his letters of administration, offered in evidence, were granted within thirty days after decedent's death without any showing of a renunciation by the widow of her right to administer. A judgment of a probate court, on matters within its jurisdiction, is as conclusive and impervious to collateral attack as is the judgment of a court of general jurisdiction.

2. ———: ———: ———: ———: **Matters in Pais.** When the probate court, having jurisdiction of the class of actions like the one before it and of the persons interested, must determine whether it has jurisdiction by the ascertainment of matters *in pais*, its determination is conclusive, and cannot be collaterally attacked by a showing that it erroneously found the facts which would give it jurisdiction. If the fact necessary to confer jurisdiction must be ascertained outside of its record the mere absence from its record of a recital of a finding of that fact, cannot be used in a collateral attack, to destroy its jurisdiction. So that, in the trial of a suit by the administrator against a railroad company for damages for the negligent killing of decedent, if there is no showing whether his widow had renounced her right to administer, and all that is shown is that the administrator, as shown by the letters offered in evidence, was appointed within thirty days after decedent's death, the presumption which attaches to the order of

McIntyre v. Frisco Railway.

the probate court making the appointment is that she had re-nounced her right, and parol testimony is not competent to over-come that presumption.

3. ——: ——: ——: ——: **By Stranger.** A stranger to a judgment who has acquired no interest in the subject-matter of the action prior to its rendition cannot attack it collaterally. A railroad company, when sued by the administrator for damages for negligently killing decedent, has no interest in decedent's es-tate, and cannot in such suit attack the order of the probate court appointing plaintiff administrator as being illegal because the ap-pointment was made within thirty days after decedent's death; for that would be an attempt to invalidate such an appointment by disputing facts which the probate court must have found before making it, namely, that decedent's widow renounced her right to administer.

4. **COMMON-LAW MARRIAGE.** An exchange of vows and an ex-pressed intention to live together as husband and wife, followed by an actual living together, constitute a common-law marriage.

5. **NEGLIGENCE: Obstruction Near Track.** It is negligence on the part of a railroad company to permit an obstruction so near its tracks as to imperil the safety of employees on passing trains, unless the necessities of the company, in properly conducting its business, require a construction to be placed in dangerous proxi-mity to its track; but when such necessity exists, the company is negligent if it fails to give warning to its employees of the danger.

6. ——: ——: **Warning: Question for Jury.** Where the railroad company is required to maintain a construction in dangerous proxi-mity to its track, it is negligent if it fails to give warning of the danger to its trainmen; and the warning necessary where the train passes on a dark night, is either actual notice, or suitable warning signals or informing lights placed upon the obstruction itself, or written notice actually brought home to the employee or so placed as to make it his duty and to give him opportunity to read it. And where there were no warning signals placed upon the obstruction, and there is no showing that the switchman, who came in contact with the obstruction as he was climbing down the ladder of a freight car of a switching train, knew the obstruc-tion was there, or ever had a copy of the rules, or knew their contents or substance or that they were circulated among the employees, and no showing that the written warning was posted at a place where his duty called him, or that it remained posted in any conspicuous place any length of time or after he began the job on which he was at the time employed, it was for the jury to say whether the company exercised reasonable care to warn him of the danger.

7. ———: Instruction: Proposition of Law. The defendant is not harmed by an instruction which requires the jury to find that plaintiff is the duly appointed and legally acting administrator of the estate of the switchman for whose negligent death he sues, where the court has already determined the question by submitting the case to the jury, and the appointment is conclusively legally established.

8. ———: ———: Broadening Issues: Unnecessary Burden Upon Plaintiff. The defendant cannot complain that an instruction for plaintiff put an additional burden upon him and required the jury to find an act of negligence which the petition did not require them to find. Where the petition charged that defendant permitted an upright post to be placed in dangerous proximity to a railroad track, defendant cannot complain that the instruction required the jury to find that defendant permitted "said post to be placed or to remain in such position." Besides, in this case the petition does charge, at least inferentially, that defendant permitted said obstruction "to remain" in dangerous proximity to the track, and there is a further distinct allegation that with the consent of defendant it was carelessly and negligently placed in a position to make it dangerous, which, after verdict, with no demurrer or motion to make more specific, sufficiently charges the act of negligence.

9. ———: ———: Injury Within Scope of Employment: Descending From Freight Car. Evidence that, at the time the deceased switchman attempted to climb down the ladder of a freight car and came in contact with a post dangerously close to the track, he and the rest of the crew were engaged in assembling freight cars in a switch yard, is sufficient to support an instruction requiring the jury to find that, at the time of the injury, he was in the performance of a duty he owed to the railroad company. Besides, grab-irons or ladders on freight cars are not used solely for climbing up and down, but for short distances switchmen uniformly ride on them.

10. ———: ———: Dangerous Obstruction Near Railroad Track: Knowledge of Danger: Assumption of Risk. Under the Federal Employers' Liability Act, an employee in entering upon a contract of employment with a railroad company assumes all risks and dangers caused by the company's negligence which are obvious and fully known to him, or so plainly observable that he must be presumed to know them; but he is not required to use even ordinary care to discover dangerous defects, nor will knowledge be imputed to him unless the danger is plainly observable. Besides, there is a distinction between knowledge of defects, and knowledge of the risks resulting from them. And in this case the evidence totally fails to show that the switchman, who attempted to climb

down the ladder of a freight car as it passed in the night time a post set dangenously near the track, knew of its dangerous proximity to the car, or of its existence, and the trial court did not err in refusing to instruct that he assumed the risk.

11. ——: ——: **Life Expectancy: Of Deceased Alone.** In a suit for damages for the negligent killing of a switchman an instruction on the measure of damages need not tell the jury to take into consideration the probable duration of the life of both the deceased and his surviving beneficiary; it is proper to base the estimate upon the one whose life expectancy is the least, and if that is the deceased the instruction which requires the estimate to be based on his life expectancy alone is not erroneous.

12. ——: ——: **Warning of Dangerous Obstruction: Broader Than Pleas and Evidence.** Reasonable care to notify a switchman of the dangerous obstruction too near 'the track to permit a freight car to pass in safety to a switchman on its ladder will relieve the railroad company of liability for his injury therefrom, and one method of effective notice is as good as another. But where the only warnings pleaded' were the promulgation of certain rules and the posting of a certain bulletin, and there was no evidence that defendant exercised any care of any degree to furnish any other kind of warning, an instruction which directs a verdict for defendant if it exercised ordinary care to give the switchman "reasonable notice other than placing a signal of danger on said obstruction" is properly refused, as being broader than either the pleading or evidence.

13. ——: ——: **Damages: Diminished by Contributory Negligence: Omission.** An instruction for plaintiff on the measure of damages, in a suit brought under the Federal Employers' Liability Act, which fails to take into account deceased's contributory negligence, is cured by another for plaintiff which takes account of such matter of defense, and by another for defendant which directs the jury that if deceased was guilty of negligence which contributed to his death they should diminish the amount of damages in proportion to the negligence attributable to him.

14. **EXCESSIVE VERDICT: $16,000.** In a suit brought under the Federal Employers' Liability Act for damages for the negligent killing of a switchman, the jury must have some definite basis from which to calculate the benefit the wife would have received in a pecuniary way during the period her husband might have been expected to live, and mortality tables are offered for that purpose; and where he was earning considerably in excess of $1000 a year, she received from him from $75 to $80 a month, he was 38 years of age and his life expectancy was 29 years, a verdict for $16,000 cannot be said to be in excess of the present pecuniary value to the wife of his support for the remainder of his life.

Appeal from St. Louis City Circuit Court.—*Hon. A. B. Frey*, Judge.

AFFIRMED.

*W. F. Evans, E. T. Miller* and *A. P. Stewart* for appellant.

(1) The court erred in overruling the demurrer to the evidence at the close of plaintiff's case, and in refusing to give the peremptory instruction requested by defendant at the close of the whole case. (a) No actionable negligence was shown. Baltimore Railroad Co. v. Newell, 196 Fed. 866; Reese v. Railway, 225 Fed. 518; Reese v. Railway, 239 U. S. 463; Hogan v. Railroad, 223 Fed. 890; Ainsley v. Railway, 90 Atl. (Pa.), 129; Pankey v. Railway, 180 Mo. App. 185; Ford v. Dickinson, 217 S. W. (Mo.), 294; Morris v. Pryor, 272 Mo. 350; Raub v. Railroad, 94 Atl. (N. J.) 567; Myers v. Railway, 95 Fed. 406. (b) The location of the falsework close to the track and the danger of a switchman on the ladder on the side of a car being struck by it were open and obvious. Clark knew of the location of the falsework, or it was so obvious and so plainly observable that he must be presumed to have known of it, and he knew there was no light on the falsework. He therefore assumed the risk of injury, even though such risk grew out of defendant's negligence. Chesapeake Railroad v. Proffitt, 241 U. S. 462; Boldt v. Railroad, 245 U. S. 441; Baugham v. Railroad, 241 U. S. 237; Kanawha Railroad Co. v. Kerse, 239 U. S. 576. In cases arising under the Federal Employers' Liability Act, the rule of assumption of risk as interpreted and applied by the United States Supreme Court must control, even though the action be brought in a state court. Seaboard Air Line v. Horton, 233 U. S. 492; Southern Railroad v. Crockett, 234 U. S. 725; Jacobs v. Railway, 241 U. S. 229; Railroad Co. v. Ward, 40

Supt. Ct. Rep. 275; Southern Railroad. v. Gray, 241 U. S. 333; New Orleans Railroad Co. v. Harris, 247 U. S. 367. (c) The evidence was insufficient to prove a common-law marriage between deceased and the beneficiary for whose benefit this action is brought. Topper v. Perry, 197 Mo. 531; McKenna v. McKenna, 180 Ill. 577; Bishop v. Inv. Co., 229 Mo. 699; Cargile v. Wood, 63 Mo. 512; Pope v. Railway, 175 S. W. (Mo.), 955. (d) Upon the entire record plaintiff was without legal capacity to maintain the action. Secs. 15, 16 and 17, R. S. 1909; Mullanphy v. St. Louis Co. Ct., 6 Mo. 291; Skelly v. Veerkamp, 30 Mo. App. 49; State ex rel. v. Collier, 62 Mo. App. 38; Williams v. Railway, 169 Mo. App. 468; Russell v. Grant, 122 Mo. 161. (2) The court erred in giving Instruction 1 at the instance and on behalf of plaintiff. (a) This instruction submitted to the jury a question of law as to whether plaintiff was the duly appointed and legally acting administrator of deceased. Williams v. Whitlock, 14 Mo. 387; Carroll v. Campbell, 110 Mo. 557. (b) This instruction went beyond the purview of the pleadings and enlarged the issues made by the pleadings. Black v. Railway, 217 Mo. 685; Degonia v. Railway, 224 Mo. 589; State ex rel. v. Ellison, 270 Mo. 655. (c) There was no evidence that deceased was on the ladder of the car in the performance of any duty, and this call in the instruction is without evidence to support it. (d) This instruction purported to cover the whole case, but excluded from the consideration of the jury the evidence tending to support the pleaded defense of assumption of risk. Railroad Co. v. Ward, 40 Sup. Ct. Rep. 276; Brownlow v. Wollard, 66 Mo. App. 636, 642; Clark v. Hammerle, 27 Mo. 70; Bank v. Murdock, 62 Mo. 73; Fitzgerald v. Hayward, 50 Mo. 523. (3) The court erred in giving Instruction No. 2 at the instance and on behalf of plaintiff. This instruction failed to require the jury to find that the cohabitation of the deceased and the beneficiary as man and wife was habitual. This error was not cured

by the giving of defendant's Instruction "A-1" which required such finding. Bishop v. Inv. Co., 229 Mo. 728; Topper v. Perry, 197 Mo. 545; Cargile v. Wood, 63 Mo. 513; State ex rel. v. Ellison, 272 Mo. 583. (4) The court erred in giving plaintiff's Instruction 4 on the measure of damages. This instruction is also in conflict with defendant's given instruction "A-3," in that it allows a recovery for the entire pecuniary loss sustained by Mary Katherine Clark, irrespective of deceased's contributory negligence. McCord v. Schaff, 216 S. W. 322; Stevens v. Power Co., 208 S. W. 630; Chesapeake Railroad v. Kelly, 241 U. S. 488. (5) The court erred in refusing to give defendant's requested Instruction "H" on assumption of risk. Kanawha Railroad v. Kerse, 239 U. S. 581; Railroad Co. v. Ward, 40 Sup. Ct. Rep. 275; Boldt v. Railroad, 245 U. S. 445; Baugham v. Railroad, 241 U. S. 240; Chesapeake Railroad v. Proffitt, 241 U. S. 468; Southern Railroad v. Gray, 241 U. S. 339. (6) The court erred in refusing to give Instruction "A-2" requested by defendant. Raub v. Railroad, 94 Atl. 567; Myers v. Railway, 95 Fed. 406. (7) The verdict is grossly excessive and is not supported by the evidence. Railroad Co. v. Vreeland, 227 U. S. 70; Chesapeake Railroad v. Kelly. 241 U. S. 489; McCord v. Schaff, 216 S. W. 322.

*Robert W. Hall* and *Earl F. Nelson* for respondent.

(1) The petition states a cause of action. Collinsworth v. Zinc Co., 260 Mo. 692; Sullivan v. Mo. Pac. Ry. Co., 97 Mo. 113; Erwin v. Mo. & Kan. Tel. Co., 173 Mo. App. 508, 59 L. R. A. 253 (c. 1). (2) Plaintiff was appointed administrator of the estate of Walter Lee Clark by the order and judgment of the Probate Court of the City of St. Louis, and this action of the probate court is not open to collateral attack. Naylor's Admr. v. Moffitt, 29 Mo. 126; Johnson v. Beazley, 65 Mo. 250; Brawford v. Wolfe, 103 Mo. 391; Masey v. Stork, 116 Mo. 481; Cox v. Boyce, 152 Mo. 576; State ex rel. v.

Holtkamp, 267 Mo. 412; State ex rel. v. Nortoni, 269 Mo. 563. (3) The evidence showed a common-law marriage between Mary Catherine Null and Walter Lee Clark. Davis v. Stouffer, 132 Mo. App. 555; Imboden v. Trust Co., 111 Mo. App. 220; State v. Cooper, 103 Mo. 272; Great Northern Ry. Co. v. Johnson, 254 Fed. 683. (4) Defendant negligently failed to furnish Clark a safe place in which to work. (a) By permitting the erection of falsework so close to its inbound and outbound tracks as not to clear its employes when on the sides of freight cars in the performance of their duties. Ry. Co. v. Kerse, 239 U. S. 576; Railroad Co. v. McDade, 191 U. S. 64, 48 L. Ed. 96; Ry Co. v. Beckett, 163 Fed. 481; Ry. Co. v. Cowley, 166 Fed. 283; West v. Ry. Co., 179 Fed. 801; Murphy v. Wabash Ry. Co., 115 Mo. 111; Charlton v. Ry. Co., 200 Mo. 364; George v. Ry Co., 225 Mo. 364; Fish v. Railroad, 263 Mo. 106; Ry. Co. v. Russell, 91 Ill. 298; Ry. Co. v. Thompson, 210 Ill. 226, 71 N. E. 328. (b) By failing to place a light or other warning or danger signal on the falsework at night. Yost v. Cement Co., 191 Mo. App. 431; Carney v. Brewing Assn., 150 Mo. App. 473; Irmer v. Brewing Co., 69 Mo. App. 17; Wendler v. Furnishing Co., 165 Mo. 537; DeLate v. Loose-Wiles Biscuit Co., 213 S. W. 885; Baldwin v. Coffee Co., 216 S. W. 998; Ford v. Dickinson, 217 S. W. 294; Sutter v. Metropolitan Ry. Co., 208 S. W. 851. (5) Clark did not assume the risk of injury from the negligence of defendant: (a) The evidence does not show that Clark knew of the upright posts or falsework between the inbound and outbound tracks. (b) If it can be said that the falsework or upright posts was so obvious that Clark must be presumed to have known of its location between the inbound and outbound tracks, the evidence does not show either that Clark knew or that it was obvious that the upright posts or falsework was close enough to strike him while riding on the side of the freight car. (c) The evidence does not show that Clark appreciated the danger of being struck by the up-

286 Mo.—16

right posts or falsework while riding on the side of a freight car. (d) The evidence does not show that Clark knew that the upright posts or falsework was unlighted or without other warning or danger signals which would call it to the attention of a switchman working at night. Ry. Co. v. Swearengen, 122 Fed. 193, 196 U. S. 51, 49 L. Ed. 382; Railroad Co. v. McDade, 191 U. S. 64, 48 L. Ed. 96; Ry. Co. v. Cowley, 166 Fed. 283; Ry. Co. v. Beckett, 163 Fed. 479; National Steel Co. v. Hore, 155 Fed. 62; West v. Ry. Co., 179 Fed. 801. (6) The verdict is not excessive. Crecelius v. Ry. Co., 223 S. W. 413.

WHITE, C.—The plaintiff, as administrator of the estate of Walter Lee Clark, deceased, recovered judgment against the defendant in the Circuit Court of the City of Saint Louis, in the sum of $16,000, damages for the alleged negligent killing of said Clark by the defendant. Clark was employed by defendant as a switchman and according to a stipulation of the parties was engaged in interstate commerce; the suit was brought under the Federal Employers' Liability Act.

Frank C. Mueller & Company had a contract with the City of Saint Louis to construct a viaduct along Chouteau Avenue over the railroad tracks of the defendant and of the Missouri Pacific Railroad Company, and it appears from the evidence that work on the viaduct had been in progress for several months at the time Clark was killed. The St. Louis & San Francisco Railroad had several tracks, including two main tracks passing under this viaduct, the inside rails of which were eight feet apart. Midway between those two tracks was placed some false work, consisting of two upright timbers about four by six inches, and standing about four feet apart, parallel with the main tracks, and extending from the ground up to the bridge, in order to support the forms in which the concrete was poured in constructing the viaduct.

On the 26th of April, 1917, the crew with which Clark was working as a switchman had been westward in the yards to the west part of the city, and in coming back had picked up two empty freight cars, shoving them eastward on the south main track passing under the viaduct and along by the false work. The train consisted of the engine, tender and the two freight cars. The engine was headed west and was pushing the cars backward. Clark, with another switchman, Walter Griffith, was on the front car fartherest from the engine. As this train approached the viaduct Griffith climbed down the ladder, or grab-irons, at the corner of the moving car, and jumped to the ground two or three car-lengths from the viaduct. At that time Clark was on top of the same car with a lantern; it was between nine and ten o'clock at night, and there was a drizzling rain. Clark then attempted to descend by the ladder, and as the car ran under the viaduct he struck against the upright timbers composing the falsework mentioned; he was knocked from his position and almost instantly killed.

The timber against which Clark was driven was four feet from the rail on which the car was running. The same car afterwards was pushed back to the place and it was found that the space between the grab-irons on that car and the false work was only ten inches—not sufficient to clear a man on the ladder.

No light or signal of any kind was displayed at the falsework to indicate its presence. Clark had been a switchman in the employ of the railroad company for a considerable time, but had been only four or five days with the particular switching crew with which he operated that day.

The ground of negligence alleged in the petition on account of which the plaintiff seeks to recover was the failure of the defendant to furnish a reasonably safe place in which to work, in that it failed to have a red lantern or other signal placed on the false work to warn

Clark of the danger when the company knew, or by the exercise of reasonable care would have known, that the false timbers mentioned were in close proximity to the track so as to make it unsafe for Clark to perform his duties.

The answer of defendant alleges that Clark was killed solely by his own negligence and his failure to exercise ordinary care to look out for himself when he knew, or by the exercise of ordinary care should have known, of the false work in close proximity to the track. Further, it set out certain rules which it avers, if observed by Clark, would have prevented his injury, and alleges defendant gave a certain specific warning to employees, switchmen and yard men, of the existence of the very falsework which caused the death of Clark, and therefore it was not negligent.

It is further alleged that Clark, in entering the employ of defendant, assumed the risk incident to running railroads along in close proximity to the falsework.

The answer also contains a general denial and a specific denial that the plaintiff was duly appointed and qualified as administrator of the estate of Walter Lee Clark, as alleged in the petition. The facts in relation to each of these general defenses will be noted more particularly in consideration of the points involved. The defendant presented a demurrer to the evidence, which was overruled. A verdict and judgment for plaintiff followed, from which defendant appealed.

I. The appellant challenges the legal capacity of the plaintiff to sue. The point is that Clark was killed April 26, 1917, and letters of administration on his estate were granted May 7th, by the probate court, to Joseph S. McIntyre. There was no showing that **Administrator: Collateral Attack on Appointment.** the widow of Walter Lee Clark had renounced her right to administer. It is argued that inasmuch as the widow, under Section 15, Revised Statutes 1909, had the first right

to administer on the estate, the court under Sections 16 and 17, Revised Statutes 1909, could not within thirty days appoint another person to administer without a showing that the widow had renounced her right to administer. Appellant therefore claims the court was without jurisdiction to appoint McIntyre administrator.

A judgment of the probate court, on matters within its jurisdiction, is as conclusive and impervious to collateral attack as the judgment of a court of general jurisdiction. When a court, having jurisdiction of the class of actions like the one before it and of the persons interested, must determine whether it has jurisdiction by the ascertainment of facts *in pais*, its determination is conclusive. If, in the absence or silence of the record as to any fact necessary to give jurisdiction, such court retains it, the finding of jurisdictional facts is presumed. In such case the judgment cannot be attacked collaterally by showing that the court erroneously found the facts which would give it jurisdiction. [Hadley v. Bernero, 103 Mo. App. 549, l. c. 557-8; In re Estate of Davison, 100 Mo. App. 263, l. c. 269; Adams v. Cowles, 95 Mo. l. c. 509; Cox v. Boyce, 152 Mo. 576, l. c. 582; Carter v. Carter, 237 Mo. l. c. 632-3; Price v. Springfield Real Estate Assn., 101 Mo. l. c. 118; Sullinger v. West, 211 S. W. l. c. 67; St. Charles Sav. Bank v. Thompson & Gray Quarry Co., 210 S. W. l. c. 870; Roloson v. Riggs, 274 Mo. l. c. 530; Brawford v. Wolfe, 103 Mo. 391; Macey v. Stark, 116 Mo. 496.]

In some of the cases cited it is stated that if the record *on its face* shows an absence of the facts which are necessary to confer jurisdiction, the court is without jurisdiction and the judgment is a nullity. But that would not be the case if the facts showing want of jurisdiction, or absence of facts showing jurisdiction, had to be ascertained outside of the record. [Macey v. Stark, 116 Mo. l. c. 496; Hadley v. Bernero, 103 Mo. App. l. c. 558.] In the present case the record of the probate court relating to the appointment of the administrator was not

introduced, nor was any entry from the record of that court offered in evidence. The plaintiff simply offered the letters of administration granted to the plaintiff, which, on their face, did not show that the widow had renounced her right to administer. There was no showing whatever as to whether or not she had renounced, and it would have been incompetent for the defendant to show by parol or other evidence outside the record itself that she had not renounced, to overcome the presumption which attached to the order of the probate court in making the appointment.

But appellant contends that a stranger to a judgment may attack it collaterally, citing Russell v. Grant, 122 Mo. 161. A stranger to a judgment may in some instances attack the judgment collaterally when a party to it cannot, but the stranger must have acquired an interest in the subject-matter of the action prior to the rendition of the judgment. [Abington v. Townsend, 271 Mo. 1. c. 615.] The defendant in this case had no interest whatever in the estate of Walter Lee Clark, and therefore was not in the position of a stranger who could make such an attack, on the judgment, on any account. The effect of the appellant's position is to attempt to invalidate the judgment of the probate court by disputing the facts which the court must have found in order to render the judgment. On that theory of the law no judgment would ever settle any question of fact.

II. The suit was brought on the theory that Walter Lee Clark left a widow, Mary Catherine Clark, who was dependent upon him for support and maintenance. The appellant denies that fact, and asserts there is no proof that Mary Catherine Clark was ever the wife of Walter Lee Clark, and the demurrer should have been sustained for that reason. The plaintiff admitted that no marriage ceremony ever was performed between the two, but offered evidence to prove a common-law marriage. This evidence shows that on April 12, 1912, five years before

Common-law Marriage.

the death of Clark, Walter Lee Clark visited Mary Catherine Null (her maiden name), at the home of her mother and father. There were present at the time Mary Catherine's father and mother, her two sisters, and other members of the family. It seems that previous to that time Lee had been "keeping company" with Mary Catherine and had been urging her to live with him without a marriage ceremony. On that evening he produced a newspaper clipping, the purport of which is not shown, but apparently relating to a common-law marriage; he showed it to Catherine's mother, her sister looked at it, and then he asked Catherine if she would live with him as his wife without a ceremony. He said it was all humbug and no use going after a paper for five or ten dollars when they could love one another and take the vows just the same without the paper. Then he asked Catherine if she would go into the arrangement with him; and her sister who related the conversation, described the result in this way:

"Well, my sister cried; she cried and of course I felt very bad; and Lee kissed her and said, 'If we are willing to take these vows and mother is satisfied, what do you say about it?' and she said, 'I will live with you that way.'"

From that time on they lived together as husband and wife until Clark was killed, April 26, 1917. They stayed at her mother's house for about two days after that agreement; and at another time lived with the mother for a year; they visited Catherine's relatives in Illinois and in Missouri. The arrangement was lived up to throughout the time with the knowledge and consent of Catherine's relatives. There was no concealment or attempt to evade the full effect and obligation of the relation. Lee introduced her always as his wife, asked people to call upon his wife, indicating her; addressed letters and post cards to her as Mrs. Kate Clark. There was no intimation anywhere throughout the entire period of five years that she sustained any other relation to

him than that of wife. Under the decisions of this State the evidence was sufficient to show a common-law marriage. [Topper v. Perry, 197 Mo. 531; State v. Harris, 222 S. W. 420.]

Appellant makes the point that the facts showing the way they lived together and held themselves out as man and wife may warrant a presumption of a common-law marriage, but the presumption would not obtain where they offered to prove the exact facts constituting the alleged arrangement. Under the authorities cited the agreement was entirely sufficient to show all the elements of a common-law marriage. An exchange of vows, an expressed intention to live together as husband and wife, followed by the actual living together, shows an intention to undertake all the obligations of the relation of marriage so that the contract was sufficiently proved. A contract is complete when the minds of the parties to it meet, with an intention to observe its terms. The question of intention was submitted to the jury by proper instruction.

III.    Another reason advanced by the appellant in support of its position that the demurrer to the evidence should have been sustained, is that there is no substantial evidence that the defendant was negligent. A number of cases have occurred where it has been held negligent on the part of the railroad company to permit an obstruction so near the track as to imperil the safety of employees. [Kanawha & Mich. Ry. Co. v. Kerse, 239 U. S. 576; Charlton v. St. L. & S. F. Ry. Co., 200 Mo. l. c. 437-8; West v. C. B. & Q. Ry. Co., 179 Fed. 801; George v. Railroad, 225 Mo. 364; Ill. Terminal R. R. Co. v. Thompson, 210 Ill. 226; Norfolk & Western Ry. Co. v. Beckett, 163 Fed. 479; Fish v. Railroad, 263 Mo. 106.]

*Dangerous Obstruction: Warning.*

If, however, the necessities of the railroad company in properly conducting its business, requires an obstruction to be placed in dangerous proximity to the track,

it is not a negligent act to so place it. [Morris v. Pryor, 272 Mo. 350; Ford v. Dickinson, 217 S. W. 294.] But owing to the dangerous character of an obstruction of that kind, a railroad company, if obliged to maintain such a structure, is negligent if it fails to give warning to its employees of its dangerous proximity to the track. [Ford v. Dickinson, 217 S. W. l. c. 299-300.]

Clark was killed after nightfall, when it must have been quite dark under the bridge. No light was placed in the subway, nor nearer than several hundred feet; no signal nor warning of any kind was displayed there for the purpose of indicating danger, so that an employee on an incoming train might see the dangerous structure. The defendant introduced evidence to show the kind of light signals which the company displayed for different purposes. A red light indicated danger, requiring an approaching train to stop; a yellow light required an approaching train to slow down and approach cautiously; a white light indicated nothing except by its motion in signaling. It appears from this evidence that while the company had rules by which lights of various colors could thus be displayed to protect and secure the safety of *trains,* there was no kind of light or signal in the company's scheme of operations by which danger might be indicated to the *men* employed. Yet, it appears that it was no uncommon thing for structures overhead and on the side to be dangerously near the track, concerning which the employees should be cautioned. In the absence of any method of displaying a danger signal, some other method of warning to the men operating trains should have been employed by the defendant company, and it was negligent if it failed to do so.

It is possible that a white light hung on that post might have illumined the darkness sufficiently to reveal the dangerous proximity of the false work, so that, an employee coming in on the train would have ascertained its position in time to avoid injury from it. It is en-

tirely possible that some sort of signal could have been given or displayed to give an employee warning. Many cases might be cited to show the defendant was negligent in failing to light up the premises so as to prevent the dangeous structure or in some way warn the employees of its existence. [Baldwin v. Coffee Co., 216 S. W. 998; De Late v. Loose-Wiles Biscuit Co., 213 S. W. 885, l. c. 887; Carney v. Brewing Assn., 150 Mo. App. l. c. 442; Yost v. Portland Cement Co., 191 Mo. App. 430; Wendler v. House Furnishing Co., 165 Mo. l. c. 537.]

Defendant, however, undertook to show that plaintiff was warned in another way; it offered in evidence its book of rules which included Rule BB and Rule No. 635, as follows:

"BB.   Special instructions, whether in conflict with these rules or not, which may be given by proper authority, whether upon the time table or otherwise, shall be fully observed while in force. Such special instructions will be kept for trainmen and yardmen in a book or on a bulletin board for that purpose at freight division terminals and at other points designated in the time table, and for enginemen on bulletin board or in a book in engine house, which must be consulted daily and before starting on any trip.

"Rule No. 635.   Employees must inform themselves respecting the location of structures or obstructions which will not clear them when on top or sides of cars."

Defendant then offered its "Exhibit 13," warning of the dangerous false works which caused the injury as follows:

"DEFENDANT'S EXHIBIT 13.

"St. Louis, Missouri, March 8, 1917,
"All Enginemen, yard-men and brakemen:

"This is to advise that false work now on new Chouteau Av. viaduct will not clear a man on side of car and will not clear engineer or fireman looking out of engine cab. This false work will include both main lines and tracks 31 and 34. Will ask that all concerned be

careful in passing this point and avoid any possible chance for injury.

"Yours truly,
"J. A. MARONEY,
"General Yard-master."

Defendant offered evidence to show that rules BB and 635 were in force April 26, 1917. But it was not shown that Clark ever had a copy of the rules, or knew their contents or substance, or that they were circulated among employees, although it may be inferred (if the jury believed the evidence) that Clark could have acquainted himself, and should have acquainted himself, with the contents of such rules. Mr. Florian, clerk of the general yard master, testified that under the direction of his superior, Mr. Maroney, he posted Exhibit 13 in the bulletin book at the switchmen's shanty where switchmen reported for work, and at other places about the yards where it was supposed the employees would acquaint themselves with its contents. It was the duty of Clark to report to the Ewing Avenue Yard, nearly a mile from Chouteau Avenue, where the injury occurred. Florian said that he sent a copy of Exhibit 13 to Ewing Avenue Yard; he didn't know whether it was posted there or not. There is no evidence to show that it was posted there, or that Clark ever saw Exhibit 13, or that his duty called him to any point where he necessarily saw it. It was issued March 9th—more than a month and a half before Clark met his fatal accident—and defendant did not attempt to prove that it remained posted in any conspicuous place any length of time, or after Clark began the job on which he was employed. He had been operating only four or five days with the crew with which he was engaged on the day of his death. All this evidence was an attempt to show affirmatively that defendant gave Clark proper warning of the danger. It was for the jury to say whether defendant exercised reasonable care in that respect.

IV. Appellant objects to instruction numbered 1 given on behalf of the plaintiff, on several grounds.

(a) The first complaint is that a proposition of law was submitted to the jury in that it was required to find that Joseph S. McIntyre was the duly appointed and legally acting administrator of the estate of Walter Lee Clark. The appellant was not harmed by that feature of the instruction. The court already had determined the question by submitting the case to the jury. As we have already seen, the appointment of McIntyre as administrator was conclusively legally established.

<span style="float:left">Issue<br>of Law.</span>

(b) It is further claimed the instruction was erroneous because it broadened the issue in that the jury was required to find, as one of the negligent acts of defendant, that it permitted "said post or upright timber to be placed or to remain in such position," and that such position "rendered it at said time and place unsafe," etc. It is urged that the petition does not allege as one of the acts of negligence of the defendant that it permitted the upright post to remain in that position where it was. It will be noticed, however, that the instruction does not direct a verdict upon finding that issue of negligence alone, but required the jury to find in addition that the defendant negligently failed to display a red lantern, or other signal of danger, as alleged in the petition. The instruction placed an additional burden upon plaintiff and required the jury to find an act of negligence which the petition did not require it to find; it is an error of which the defendant cannot complain. [Krinard v. Westerman, 279 Mo. 680; Turnbow v. K. C. Rys. Co., 277 Mo. 644; Bryant v. K. C. Rys. Co., 217 S. W. l. c. 634; Malone v. St. L. & S. F. Ry. Co., 213 S. W. l. c. 867; Shawhan v. Shawhan Distillery Co., 197 S. W. l. c. 374; Martin v. Coal Co., 174 Mo. App. 1 c. 445-6; Moore v. McHaney, 191 Mo. App. l. c. 697.]

<span style="float:left">Broadening<br>Issues.</span>

The cases cited by the appellant upon this proposition, State ex rel. v. Ellison, 270 Mo. l. c. 645-55; De-

gonia v. Railroad, 224 Mo. l. c. 589, are cases where the instruction not only required a finding of some fact not charged in the petition, but placed an additional burden upon the party complaining. Besides, the petition, after describing the contract by which the viaduct was to be built for the city, and the erecting of the falsework, states:

"That said falsework, or upright timbers, were, with the knowledge and consent of defendant, carelessly and negligently placed by the said Frank C. Mueller & Company, and the City of St. Louis, in such close proximity to the rails over which defendant railway company operated its trains at, along and under the said viaduct, as to make it impossble for one standing or hanging on the iron ladder of one of said railway company's freight cars moving over said tracks at said place to pass free and clear of said falsework, or upright pieces."

Then, after describing the incident which resulted in Clark's death, the petition proceeds:

"Said railway company knew, or by the exercise of reasonable care for the safety of said Walter Lee Clark would have known, that said false timbers or upright pieces were in such close proximity to said railroad tracks as to make it unsafe and dangerous for said Clark to perform his duties as switchman in connection with the handling of said freight train."

Here is not only an inferential statement that the falsework was dangerous and that the defendant knew it and allowed it to remain, but there is a distinct allegation that with the consent of the defendant it was carelessly and negligently placed in a position to make it dangerous. We are not prepared to say, after verdict, with no demurrer or motion to make more specific, that the petition fails sufficiently to allege that act of negligence.

(c) It is further claimed that there was no evidence that Clark, at the time he was killed, was in the performance of any duty which he owed the company;

In Performance of Duty.

that there was nothing to show his duties required him to descend from the side of the car at that point. Walter Griffith, a switchman, who operated with him and who was the only eye witness to Clark's injury, testified as to what Clark was doing:

"We taken those cars up to the Bell Telephone, and we crossed over to the inbound main, then we was to bring those cars back down under Black Bridge, that was what they called it, the Black Bridge; we were to go up in the yard there and get some more cars; we were not making up a train somewhere; we were to take those cars down to Ewing Avenue, which was a switch yard where they received cars from the Terminal and delivered cars to the Terminal. Going from the place where we picked these two cars up to the Ewing Avenue yard would take us over the Frisco rails right under the Chouteau viaduct; there was no other track we could use."

When Griffith says: "We were to go up into the yards there and get some more cars," it does not appear where the cars were, but it is plainly inferable that after the two cars which the engine was pushing had been shoved under the bridge, the crew was to go back and get other cars near. This statement is immediately followed by Griffith saying: "We were to take those cars down to Ewing Avenue;" apparently after they had gathered some more cars. This theory is enforced by the facts that Griffith himself got down just before Clark did, before they reached the viaduct, and that Eastabrook, the foreman of the switching crew, descended from the car 300 feet before they reached the viaduct. Evidently it was the intention of the crew to dismount there and pick up some more cars, as indicated by Griffith, to be taken back into the yard from the direction they had come when they brought the two cars they then had.

Besides, we are not prepared to say that the grab-irons or ladders extending up and down the corners of

the cars were used only for the purpose of climbing up and down. Employees undoubtedly rode short distances on them. Griffith was riding there when he observed the dangerous falsework. The jury was required to find that Clark, at the time he was struck, was in the scope of his employment as a switchman. The evidence, we think, is sufficient to support the finding to that effect.

It is further claimed that the instruction was erroneous because it failed to submit to the jury the question whether Clark assumed the risk, and failed to require a finding for defendant if Clark had knowledge of the falsework and its close proximity to the track.

Assumption of Risks.

The court also refused an instruction asked by the defendant to the effect that if Clark knew of the presence and close proximity of the upright timbers and with such knowledge continued in the service of the defendant where his duties required him to pass said falsework, then he would be held to have assumed the risk and the plaintiff could not recover.

The appellant asserts several times that Clark knew the falsework was there. The respondent denies that and claims there was not sufficient evidence to submit that issue to the jury. The evidence shows that Clark had been in the employ of the defendant for a long time, but had been connected with the particular crew with which he was engaged in switching the day on which he was killed only four or five days. This crew had passed under this bridge several times during that period—perhaps two or three times a day. Walter Griffith, the switchman who was on the car at the time and descended just before Clark was killed, testified that he knew of the falsework, noticed the viaduct as the train approached it, and got down off the car by means of the grab-irons two or three cars lengths from the viaduct. He said Clark had been by that falsework with the rest of the crew. This was also testified to by the foreman, Mr.

Eastabrook. He said, however, on cross-examination, that on the occasions when the crew passed the false-work they went right through and did no switching there. That was all the evidence which the appellant claimed tended to show that Clark was acquainted with the position and dangerous proximity of the upright posts.

The Federal courts in cases arising under the Federal Employers' Liability Act hold that an employee in entering upon a contract of employment assumes all the risks and dangers ordinarily incident to his employment; and risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them. [Boldt v. Railroad, 245 U. S. l. c. 444; Southern Ry. Co. v. Crockett, 234 U. S. l. c. 730; Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. l. c. 468; Pryor v. Williams, U. S. Sup. Ct. Advance Opinions for Dec. 1, 1920, p. 12, reversing Williams v. Pryor, 200 S. W. (Mo.) 53.] But he is not obliged to use even ordinary care in discovering dangerous defects. Knowledge will not be imputed to him unless the defects are plainly observable. [Texas & P. Ry. v. Archibald, 170 U. S. 665; Railroad v. McDade, 191 U. S. 64; Ry. Co. v. Shalstrom, 45 L. R. A. (N. S.) 387, l. c. 390.]

Several cases have arisen on account of injuries received by railroad employees from obstructions near railroad tracks on which they were employed, in which cases it was claimed that the risk was assumed. The McDade case, supra, was such a case. In that case the question was submitted to a jury, but in the discussion of the proposition the court lays down the rule as stated.

In the case of West v. C. B. & Q. Ry. Co., 179 Fed. 801, the Circuit Court of Appeals of the Seventh Circuit, United States, said, l. c. 804: "If it might be inferred that he had noticed the bridge, that would be far from establishing that he had ever apprehended the danger arising from its presence. The record contains no evidence that anyone had informed him of the particular

danger, nor any statement or admission that he knew of it. The knowledge, actual or constructive, that must have been brought home to West was not merely knowledge that there was an overhead bridge in this locality, but knowledge of the danger that would arise at the instant when a tall man standing erect on a high car in a moving train was about to pass under the bridge." The question was submitted to the jury, but the question as to whether there was evidence sufficient to submit that issue did not arise. [See, also, Chesapeake & O. Ry. Co. v. Cowley, 166 Fed. 283.]

In the case of National Steel Co. v. Hore, 155 Fed. 62, l. c. 65, the Federal court said, in relation to just such an obstruction: "To defeat an action by the defense of assumption of risk, the employer must show not only that the servant knew of the negligence of which he complains, but that he knew and understood, or ought to have known and appreciated, the increased danger to which he voluntarily exposed himself. There is a distinction between knowledge of defects or knowledge of alleged negligent acts, and knowledge of the risks resulting from such defects or acts."

The case of Norfolk & Western Ry. Co. v. Beckett, 163 Fed. 479, was one where an employee of a railroad company while clinging to a car was struck against a standpipe dangerously near the track and injured. The circumstances were quite similar to those in this case. The court held that the plaintiff did not assume the risk. The court said, l. c. 482: "In other words, he had knowledge of the existence of the standpipe and its relative position to cars while passing it in a general way, but there is nothing to show that he had any knowledge *as to the increased hazard resulting from the close proximity of the stand pipe to the center of the track.*"

In this case the evidence shows only that Clark, operating with the crew to which he was was attached, passed under this bridge. It is not shown that he ever passed there at night so as to ascertain whether a light

or signal was displayed on the falsework to indicate its position. It was not shown that he was ever on the ground at that point before the time he was killed. It is not shown that is passing through he was riding on top of the car, or on the side of the car next the false-work, or that he rode in any position on any train at any time such that he would necessarily observe the position of the falsework. It is only shown that he was with the crew that went through there several times during the period of four or five days. The appellant would have the court infer from that circumstance that he knew the falsework was there, knew its proximity to the track and knew the danger to anyone attempting to climb down the grab-irons while passing by it. It is clearly evident that Clark did not know how close the obstruction was or he would not have attempted to descend at the time he did. There is nothing in this evidence tending to show that he knew and appreciated, or deliberately undertook to encounter, the danger. It was after dark, when the position of the upright posts must have been difficult to determine. The only evidence in respect to it indicates that he was entirely unconscious of the danger.

We think the evidence was entirely insufficient to submit to the jury the question whether Clark knew and appreciated the position of the obstruction and the danger which he would incur on account of it. The trial court properly refused to instruct as requested by the appellant.

V. Error is assigned to an instruction on the measure of damages given on behalf of plaintiff, which authorized the jury in assessing damages to take into consideration the probable duration of life of

Life Expectancy. Walter Lee Clark. It is claimed that the expectancy on his life is not a proper standard by which to measure the damage, but it must be the expectancy of both the beneficiary and the deceased. The rule is that mortality tables may be considered in evidence in determining expectancy of one's life, and the expectancy of

the beneficiary and of the deceased may be considered. It is proper in such cases to base the estimate upon the who whose life expectancy is the least in determining the value of the benefits which the death has removed. [Morton v. S. W. Tel. & Tel. Co., 280 Mo. 360, and cases cited; Boettger v. Iron Co., 136 Mo. 531; O'Mellia v. Ry. Co., 115 Mo. 205; McCord v. Schaff, 216 S. W. 1. c. 322; Stevens v. Kansas City L. & P. Co., 208 S. W. 1. c. 631; Collins v. Paper Mill Co., 143 Mo. App. 1. c. 342.

So there was no error in giving the instruction. The evidence shows that Walter Lee Clark was older, and therefore had less life expectancy than Catherine Clark.

VI. Complaint is made of the failure of the court to give Instruction A2, asked by the defendant, to the effect that if the defendant exercised reasonable care to give Walter Lee Clark reasonable notice of the dangerous location of the falsework, by means other than placing a signal of danger on it, then the defendant was not negligent in failing to place a signal of danger on said falsework, and the plaintiff was not entitled to recover.

*Reasonable Warning.*

No doubt reasonable care on the part of defendant to notify Clark of the dangerous falsework would relieve it of liability, and one method of effective notice is as good as another, if properly pleaded and proved. The only warnings pleaded in the answer were the promulgation of Rules BB, and 635, and the posting of the bulletin, "Exhibit 13." There is no evidence that defendant exercised any care of any degree to furnish any warnings of any kind other than those. Doubtless there were other methods by which Clark could have been notified of the danger; he could have been told by word of mouth; a personal letter could have been addressed to him. The instruction directs a verdict for defendant if it exercised ordinary care to give Clark "reasonable notice . . . other than placing a signal of danger on said falsework." That would cover *any notice* whatever, whether proven or not. The instruction was broad-

'er than the pleading, broader than the evidence, and was, therefore, properly refused. [Degonia v. Railroad, 224 Mo. l. c. 589-590.]

VII. It is asserted that Instruction No. 4, on the measure of damages, is erroneous because it allows for recovery for the entire pecuniary loss sustained by Mary Catherine Clark, irrespective of any contributory negligence of the deceased which must be taken into account under the Federal Employers' Liability Act. While Instruction No. 4 does not take account of it, Instruction No. 3 given on behalf of plaintiffs does, and Instruction 3A, requested by the defendant and given by the court, directs the jury that if Walter Lee Clark was guilty of negligence which contributed to his death the jury should diminish the amount of damages in proportion to the negligence attributable to said Clark.

The rule that instructions must be taken as a whole is applied to instructions of this character. Where an instruction on behalf of plaintiff authorizes recovery on a finding by the jury of all the affirmative facts necessary for such recovery, omitting mention of defenses urged by defendant, such instruction is erroneous, but it is always cured where such mere matters of defense are supplied by instructions given on behalf of defendant. This has been held repeatedly as an established rule in this State. [Colburn v. Krenning, 220 S. W. l. c. 940; Hoagland v. K. C. Rys. Co., 209 S. W. l. c. 572; Johnson v. Traction Company, 176 Mo. App. l. c. 186-7; Meily v. Railroad, 215 Mo. l. c. 587-88; Gordon v. Burris, 153 Mo. l. c. 232; Austin v. St. Louis Transit Co., 115 Mo. App. 152.]

It is urged that other instructions offered by the defendant and refused by the court were correct and should have been given, but so far as any such instructions correctly state the law, they are covered by instructions given.

VIII.   It is claimed that the verdict of $16,000 was excessive, greatly more than any pecuniary benefit Mary Catherine Clark would have received from Walter Lee Clark during the period which he might be ex-

**Excessive Verdict.** pected to live. The jury must have some definite basis from which to calculate the benefit the wife would receive in a pecuniary way, and mortality tables are offered for that purpose.   Clark was thirty-eight years of age at the time of his death, with a life expectancy as shown by the mortality tables of about twenty-nine years.   Mrs. Clark testified that he was earning about $120 a month, of which he always turned over to her $80 or $90 each month.   The defendant offered in evidence his pay checks to show his earnings had been less than that during part of the time when he was employed by the defendant.   The figures given in some of those pay checks, which do not clearly indicate the length of time his services covered to earn such pay, failed to show his earnings were appreciably less than that claimed by Mrs. Clark.   The evidence is sufficient to justify the finding that his earnings were considerably in excess of a thousand dollars a year, and that he turned over to his wife regularly a large part of that sum, as much as $75 or $80 a month.   The present worth of his earnings must be calculated upon the time of each payment.   We are not prepared to say that in figuring the matter the jury did not correctly ascertain the present pecuniary value to the wife of her husband's support for the remainder of his life.   The case of Crecelius v. Railroad, 223 S. W. 413, was a death claim under the Federal Employers' Liability Act.   The decedent was thirty-four years of age, with an expectancy of thirty-two years, and earning $52 a month.   The court reduced a verdict of $25,000, to $15,000, as the reasonable compensation for the loss of the pecuniary benefits which the widow would have received.   The court in that case suggested that the jury might consider the probable increase of compensation of one  situated as Clark was in this  case, since he

was likely to receive an increase in compensation under the Adamson Law. In the Crecelius case the expectancy was but little more than the expectancy in this case, and the wages but little more than half as much. In view of the ruling in that case, we do not feel warranted in finding the verdict excessive.

There being no error in the record the judgment is affirmed. *Mozley, C.,* Concurs in result; *Railey,, C.,* not sitting.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted by the court. *Walker* and *Williamson, JJ.,* concur; *Williams, P. J.,* not sitting.